The PEOPLE of the State of Colorado, Plaintiff

v.

Malinda E. SPYKSTRA, Defendant.

No. 09SA91.

Supreme Court of Colorado, En Banc.

June 21, 2010.

 

Thom K. LeDoux, District Attorney for the Eleventh Judicial District, Kathleen M. O'Brien, Deputy District Attorney, Fairplay, Colorado, Attorneys for Plaintiff.

Pearson, Horowitz & Burnett, P.C., Sean P. Paris, Denver, Colorado, Attorneys for Defendant.

Douglas K. Wilson, Colorado State Public Defender, Ann M. Roan, Deputy State Public Defender, Denver, Colorado, Attorneys for Amicus Curiae Office of the Colorado State Public Defender.

Scott W. Storey, District Attorney, First Judicial District and President of the Colorado District Attorneys' Council, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado, Attorneys for Amicus Curiae Colorado District Attorneys' Council.

John W. Suthers, Attorney General, Catherine P. Adkisson, Assistant Solicitor General, Denver, Colorado, Attorneys for Amicus Curiae Colorado Attorney General.

Hutchinson Black and Cook, LLC, Kimberly M. Hult, Boulder, Colorado, Attorneys for Amicus Curiae The National Crime Victim Law Institute.

Victim Justice, P.C., John C. Clune, Denver, Colorado, Attorneys for Amici Curiae the Subpoenees and Parents of Victim of Child Sexual Assault and the Victim.

Chief Justice MULLARKEY delivered the Opinion of the Court.

## I. Introduction

At issue in this original proceeding is a trial court ruling denying the District Attorney's motion to quash two subpoenas duces tecum served by Malinda Spykstra, the defendant in a pending child sexual assault case, on the parents of B.G., the victim. In denying the motion to quash, the trial court ordered the parents to permit a defense expert to search their home computer and retrieve emails written by B.G.

As a preliminary matter, we uphold the trial court's finding that the District Attorney has standing to challenge the subpoenas issued to the parents. On the merits, however, we reverse the trial court's denial of the District Attorney's motion to quash. The trial court erred in ordering enforcement of the subpoenas by allowing Spykstra's computer forensic expert into the home of B.G.'s parents to search their computer because such a procedure effectively converted the subpoenas into search warrants. The trial court also erred in enforcing the subpoenas despite the lack of a sufficient factual basis to support them. We order the trial court to quash the subpoenas as unreasonable and oppressive.

## II. Facts and Procedural History

In this child sexual assault case, Spykstra was charged with subjecting a child, B.G., to sexual contact between December 1, 2003, and December 1, 2005. The record before us provides no additional details of the facts underlying the charges.

Shortly after charges were filed, on March 24, 2009, pursuant to Rule 17(c) of the Colorado Rules of Criminal Procedure, Spykstra issued two subpoenas duces tecum to B.G.'s parents commanding each of them to produce in court on a certain date before trial every electronic device in their possession:

1. All computers, including, but not limited to: desktop computers, laptop computers, and cell phones, now in your possession from which you receive, have received, or expect to receive electronic communications, including but not limited to: instant messages, chat communications, e-mails, and web log ("Blog") communications, not otherwise privileged during the period of 2003 through April 6, 2009.

2. All hard drives, or other electronic storage devices, including but not limited to: cell phones, jump drives, thumb drives, internal hard drives, and external hard drives, now in your possession from which you receive, had received, or expect to receive electronic communications, including but not limited to: instant messages, chat communications, e-mails, and web log ("Blog") communications, not otherwise privileged during the period of 2003 through April 6, 2009.[1]

The District Attorney moved to quash the defendant's pretrial subpoenas as unreasonable and oppressive, contending that they amounted to an impermissible fishing expedition. The prosecution's motion asserted that compliance with the subpoenas would expose irrelevant personal information, impede the mother's ability to conduct her real estate business, and disclose the father's privileged communications made in his capacity as a minister. More specifically, the motion explained that the parents' computer contained business records; tax returns; personal

---

**1.** The subpoenas also sought other items not at issue here.

medical information; correspondence involving the father's worship team at church; and the personal information of the mother's clients, including social security numbers, tax returns, and pay stubs.

In response, Spykstra argued that the District Attorney lacked standing to bring the motion. Alternatively, Spykstra argued that the subpoenas were not unreasonable or oppressive, but she suggested that the subpoenas could instead be modified. She explained that the purpose for obtaining the electronic information was, "to the extent that the Defendant disputes the credibility of B.G. and the allegations she has made, the Defendant wants to uncover any communications that amount to inconsistent statements, and which may serve to impeach B.G.'s credibility." In briefing and oral argument before this court, defense counsel indicated that Spykstra was seeking evidence that B.G. had recanted her story. However, Spykstra presented no evidence that such communications existed or that they would contain statements inconsistent with the victim's allegations. Indeed, defense counsel conceded in oral argument: "I can't point to anything in particular."

The trial court declined to allow the parents or the parties' computer forensic experts to testify regarding the subpoenas and entertained no expert testimony as to how the information could or would be obtained from the parents' computer, which was the ultimate focus of the subpoenas.

In its written order, the trial court concluded that the District Attorney had standing to bring the motion to quash given the prosecutor's responsibilities under the Colorado Victim Rights Act. Although it found the subpoenas as initially written to be unreasonable and oppressive due to the impact on the parents' businesses, the court modified rather than quashed the subpoenas:

[I]n order to insure that the Defendant's rights to a fair trial are respected, the Court is exercising its authority to substantially restrict the provisions of the subpoena duces tecum. During oral argument the Defendant represented that the primary information being sought pertains to any email communications from the victim that may be recovered from her parents' computer. Therefore, it is the order of this Court that the victim's parents must reasonably cooperate with the Defendant's forensic expert to allow him to retrieve ONLY any email communications from the victim. In the event the victim's parents contend that any of such email communications are confidential and need to be protected, they may apply to the Court for an in camera review for a determination prior to their release to the Defendant.

The Defendant's forensic expert shall contact the victim's parents to make arrangement to come to their residence at a mutually convenient day and time to retrieve the email communications from the victim.

The method for retrieving the information was suggested by Spykstra at the motions hearing but strongly objected to by the District Attorney.

The true scope of information sought by the defendant has been a moving target. Spykstra's March 24, 2009 subpoenas initially sought to inspect every electronic storage device possessed by B.G.'s parents that could have received electronic communications from B.G. from 2003 to April 6, 2009, a time period including future communications not yet written. In her response to the motion to quash, she was willing to modify the request to "electronic communications by, to, and between B.G. and her parents related to the allegations of this case." However, in briefing to this court, Spykstra concluded by asserting a right to review all communications "by, to and between B.G. and her mother." The trial court's order ultimately required that a defense expert be permitted to search the parents' computer for emails *from* B.G., but the order did not limit the emails to the subject of the allegations in this case or modify the nearly six and one-half year time period defined in the subpoenas.

After the court issued its order, the parents did not comply and did not respond to calls from the defendant's computer forensic expert. The District Attorney subsequently filed this original proceeding, and the trial court stayed execution of its order pending resolution of this case.

## III. Jurisdiction and Standard of Review

We decided to exercise our original jurisdiction because there is no other adequate appellate remedy. C.A.R. 21(a)(1). Should the parents be wrongfully compelled to produce protected information and to produce it in an impermissible manner, the harm would not be curable on appeal. *See Cantrell v. Cameron,* 195 P.3d 659, 660 (Colo.2008); *Bond v. Dist. Ct.,* 682 P.2d 33, 36 (Colo.1984).

■ In this case, we review the District Attorney's standing to object to the parents' subpoenas and the propriety of the trial court's order enforcing those subpoenas. "Because standing is a question of law, we review the issue *de novo.*" *Ainscough v. Owens,* 90 P.3d 851, 856 (Colo.2004). We review for abuse of discretion the trial court's order modifying and enforcing the subpoenas. *Losavio v. Robb,* 195 Colo. 533, 537, 540, 579 P.2d 1152, 1155, 1157 (1978); Crim. P. 17(c).

## IV. Analysis

■ This case involves the interpretation and the application of Rule 17(c) of the Colorado Rules of Criminal Procedure. Like many states, our rule is patterned after the federal rule. *See* Fed.R.Crim.P. 17(c); *see, e.g., Commonwealth v. Lampron,* 441 Mass. 265, 806 N.E.2d 72, 76 (2004) (Massachusetts's rule was modeled after the federal rule); *Schreibvogel v. State,* 228 P.3d 874, 881 n. 5 (Wyo.2010) (Wyoming's rule was based on the federal rule). Although the decisions of the federal courts and other state courts are not controlling, we look to them for guidance in construing Crim. P. 17(c). *See Benton v. Adams,* 56 P.3d 81, 86 (Colo.2002) (looking to the federal counterpart for guidance in construing C.R.C.P. 15(a)).

As a preliminary matter, we hold that the trial court correctly determined that the District Attorney has an independent interest in the prosecution of the case that confers standing to move to quash Spykstra's subpoenas.

We make the rule absolute, however, because the trial court abused its discretion in ordering enforcement of the subpoenas. The court committed two serious errors, each rendering the order invalid. First, the trial court's order improperly converted the subpoenas into search warrants by ordering B.G.'s parents to permit Spykstra's computer forensic expert to enter their home and search their computer. In keeping with its limited purposes, Crim. P. 17(c) expressly contemplates production of evidence by the witness in court or other hearing, not search and seizure of evidence by a defendant or her representative.

Second, Spykstra failed to set forth a specific factual basis demonstrating a reasonable likelihood that the emails she sought existed on the computer and contained material evidence. A Crim. P. 17(c) subpoena is limited to "evidence," and when a subpoena is returnable pretrial, the trial court, if called upon, must also consider the circumstances of the subpoena to determine whether it is unreasonable or oppressive. To aid in this analysis, we adopt a test modeled after the test in *United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). Spykstra has failed to satisfy this test due to the lack of a factual basis for the emails' existence and materiality.

Based on these errors, we direct the trial court to quash the subpoenas.

### A. District Attorney Standing

■ Spykstra contends that although the People are the named party bringing this prosecution, the District Attorney does not have standing to move to quash subpoenas issued to third parties. We hold that the District Attorney, as the attorney for the People in a criminal proceeding, does have standing to move to quash a third-party subpoena.

We reject Spykstra's characterization of the District Attorney's actions as taken on behalf of B.G.'s parents because we find that the District Attorney has an independent interest in ensuring the propriety of the subpoenas. As the prosecuting party, the District Attorney has an interest in the case's management, particularly in the prevention of witness harassment through improper discovery requests. This is especially so where

the witnesses are the parents of a minor victim.

In jurisdictions with rules similar to Crim. P. 17(c), courts have found that the prosecution has standing to challenge a defense subpoena of a third party. We find the reasoning of the Supreme Judicial Court of Massachusetts in *Commonwealth v. Lam*, 444 Mass. 224, 827 N.E.2d 209, 213–14 (2005), particularly applicable here. Charged with sexually assaulting a minor girl, the defendant sought from the girl's father "statements or e-mails of the complainant concerning sexual abuse." *Id.* at 212 n. 3. The prosecution challenged the trial court's order requiring the father to disclose the emails, and the defendant asserted that the Commonwealth lacked standing. *Id.* at 213.

Rejecting the defendant's claim, the Massachusetts court explained:

> A majority of courts interpreting Fed. R.Crim.P. 17(c), on which our rule 17(a)(2) is based have allowed the government to challenge the issuance of subpoenas duces tecum to third parties. We agree. The Commonwealth, charged with prosecuting the case, will often be able to assist a judge in determining whether a motion under rule 17(a)(2) involves an improper "fishing expedition." The Commonwealth, of course, also has an interest in preventing unnecessary harassment of a complainant and other Commonwealth witnesses caused by burdensome, frivolous, or otherwise improper discovery requests. A complainant or witness should be forced neither to retain counsel nor to appear before a court in order to challenge, on the basis of a partial view of the case, potentially impermissible examination of her personal effects and the records of her personal interactions. Those dangers are particularly obvious where, as here, the summonses are directed at minors and their caretakers. The Commonwealth has standing to challenge a defendant's motion for summonses.

*Id.* at 213–14 (citations omitted). The reasoning in *Lam* applies with equal force here.

Spykstra cites no statute prohibiting the District Attorney from filing this type of motion. To the contrary, a district attorney has the general authority to appear and participate in proceedings to which the People of the State are party. *See* § 20–1–102(1), C.R.S. (2009). Moreover, the limited exceptions to a district attorney's general authority to appear on behalf of the State do not apply. No district attorney disqualification rule is involved in this case, see § 20–1–107(2), C.R.S. (2009), and the General Assembly has not authorized a different body to prosecute this action, *see Harris v. Jefferson County Ct.*, 808 P.2d 364, 365 (Colo.App.1991) ("[W]hen the General Assembly authorizes a different body to prosecute a particular type of action, then the district attorney is without authority to act.").

Crim. P. 17(c) further supports the District Attorney's standing to move to quash the subpoenas. The rule permits motions to quash or to modify a subpoena but does not expressly limit or enumerate who may bring such a motion. Crim. P. 17(c); *cf.* Colo. Bar Assoc. Ethics Opinion 102: Use of Subpoenas in Criminal Proceedings, Mar. 21, 1998 (stating that, in addition to the person served with the subpoena duces tecum, a party to the proceeding may move to quash the subpoena). Moreover, unlike Rule 17 in other jurisdictions, our Crim. P. 17(c) uniquely requires that notice be given to district attorneys upon issuance of a third-party subpoena, thus indicating their interest in the matter and implying consequent standing to object. *Compare* Crim. P. 17(c) (requiring a copy of the subpoena to be provided to opposing counsel) *with* Fed. R.Crim.P. 17(c) (lacking such a requirement).

Accordingly, we conclude that the District Attorney has standing to challenge the subpoenas.

## B. Pretrial Third–Party Subpoenas Duces Tecum

We next review the scope and proper application of Crim. P. 17(c) in this case. The rule provides:

> In every criminal case, the prosecuting attorneys and the defendant have the right to compel the attendance of witnesses and the production of tangible evidence by service upon them of a subpoena to appear for

examination as a witness upon the trial or other hearing.

. . .

**(c) For Production of Documentary Evidence and of Objects.** A subpoena may also command the person to whom it is directed to produce the books, papers, documents, photographs, or other objects designated therein. The subpoenaing party shall forthwith provide a copy of the subpoena to opposing counsel (or directly to the defendant if unrepresented) upon issuance. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents, photographs, or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents, photographs, or objects or portions thereof to be inspected by the parties and their attorneys.

Crim. P. 17.

Crim. P. 17(c) is the means by which the prosecution and defendant may compel third parties to produce evidence for use at trial. It additionally permits pretrial inspection of that evidence under the supervision of the court in order to facilitate and expedite trials involving voluminous documents, not to grant additional discovery. *United States v. Carter,* 15 F.R.D. 367, 369 (D.D.C.1954) (citing Advisory Committee notes to the drafts of the federal rule which, in addition to restating preexisting law, included this new provision permitting a court to require a subpoena duces tecum to be returned prior to trial).

Crim. P. 17's procedure for compliance thus requires a witness to produce the evidence at trial or other hearing in connection with examination. With respect to subpoenas duces tecum returnable before trial, as were issued in this case, Crim. P. 17(c) requires in-court production. This controlled method of disclosure protects the third party from unreasonable search and seizure. *See Tattered Cover, Inc. v. City of Thornton,* 44 P.3d 1044, 1060 n. 27 (Colo.2002) (describing the Crim. P. 17(c) subpoena duces tecum as a "less invasive technique than a search warrant"); *People v. Mason,* 989 P.2d 757, 761 (Colo.1999) ("[A] subpoena duces tecum invokes procedural safeguards that even the issuance of a warrant cannot provide."); *A v. Dist. Ct.,* 191 Colo. 10, 17–18, 550 P.2d 315, 321 (1976) (in a grand jury subpoena, holding that no Fourth Amendment issue was raised where there was no actual "invasion of the home, the office, the person, nor any seizure of the private papers of the petitioners against their will," and where Crim. P. 17(c) placed the court between the order of the subpoena and its enforcement); *see also* 2 Charles Alan Wright & Peter J. Henning, *Federal Practice and Procedure, Criminal Rules* § 275 (4th ed. 2009) ("Unlike a search warrant, a subpoena duces tecum does not disturb the recipient's possession of property or the right to privacy. The person to whom the subpoena is directed must have the papers with him at the designated time and place so that they may be used in evidence, but he is not required to surrender possession of them, unless they have been subpoenaed by a grand jury."); *United States v. Re,* 313 F.Supp. 442, 448 (S.D.N.Y.1970) (explaining that the refusal to comply with the subpoena cannot be disregarded and the documents cannot be seized).

As the rule and the cases make clear, the party issuing the subpoena cannot search and retrieve evidence in a third-party witness's possession. Rather, it is the witness who must comply with the subpoena by producing the evidence in court. When the witness appears in response to a subpoena and in good faith asserts full compliance to the extent the evidence exists, the subpoena process is at an end.

Crim. P. 17(c) requires a court, on motion, to block the enforcement of an unreasonable or oppressive subpoena by modifying or quashing the subpoena. Although the rule itself does not further define what is unreasonable or oppressive, the nature of the court's inquiry necessarily turns on the facts and circumstances of the case.

With respect to pretrial subpoenas, the four-part test adopted by the Supreme Court in *Nixon,* 418 U.S. at 699–700, 94 S.Ct. 3090, has become the standard. Before pretrial

production may be required, the *Nixon* test requires the party issuing the subpoena to show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id.* The Court further explained: "Against this background, [the subpoenaing party], in order to carry his burden, must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700, 94 S.Ct. 3090.

■ Because the *Nixon* test addresses and prevents potential abuse of the rule as a broad discovery tool, we adopt a substantially similar standard, adding an initial element to make explicit what is otherwise inherent. Accordingly, when a criminal pretrial third-party subpoena is challenged, a defendant must demonstrate:

> (1) A reasonable likelihood that the subpoenaed materials exist, by setting forth a specific factual basis;
>
> (2) That the materials are evidentiary and relevant; [2]
>
> (3) That the materials are not otherwise procurable reasonably in advance of trial by the exercise of due diligence;
>
> (4) That the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

> (5) That the application is made in good faith and is not intended as a general fishing expedition.

*See Nixon,* 418 U.S. at 699–700, 94 S.Ct. 3090; *Mason,* 989 P.2d at 761 (requiring the prosecution to demonstrate probable cause to obtain the defendant's protected bank and telephone records from third parties by showing (1) a reasonable likelihood that the evidence exists and (2) a nexus between the materials and the charges against the defendant).

The first two elements incorporate Crim. P. 17's limited scope—subpoenas are for the production of "evidence." Crim. P. 17; *see Mason,* 989 P.2d at 761 (describing Crim. P. 17(c) as authorizing the prosecutor to obtain "evidentiary materials"). The remaining elements recognize the limited, practical purpose for which a pretrial subpoena duces tecum is intended. *See Nixon,* 418 U.S. at 698–99, 94 S.Ct. 3090; *Carter,* 15 F.R.D. at 369. Each of these requirements ensures that a Crim. P. 17(c) subpoena is not an investigatory tool. The rule does not create an equivalent to the broad right of civil litigants to discovery of all information that is relevant or may lead to the discovery of relevant information. *See* C.R.C.P. 26(b); *Nixon,* 418 U.S. at 698, 94 S.Ct. 3090 (explaining that Fed.R.Crim.P. 17(c) was "not intended to provide a means of discovery for criminal cases" (citing *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951))). Instead, pretrial production and inspection expedites criminal proceedings by allowing "the parties in advance of trial to obtain and evaluate certain documentary evidence with a view toward determining its possible utility at trial." 2 Barbara E. Bergman & Nancy Hollander, *Wharton's Criminal Evidence* § 10:9 (15th ed.1998); *Nixon,* 418 U.S. at 698–99, 94 S.Ct.

---

**2.** The *Nixon* Court expressed a strict admissibility requirement but also recognized, without deciding, that this requirement might not apply to subpoenas issued to third parties. *Nixon,* 418 U.S. at 700 n. 12, 94 S.Ct. 3090; *see also* Benjamin E. Rosenberg & Robert W. Topp, *The By-Ways and Contours of Federal Rule of Criminal Procedure 17(C): A Guide Through Uncharted Territory,* 45 Crim. Law Bulletin 195, 209–13 (Spring 2009) (criticizing the application of the *Nixon* evidentiary standard to defense third-party subpoenas) (collecting cases); Peter J. Henning, *Defense Discovery in White–Collar Criminal Prosecutions: Federal Rule of Criminal Procedure in Subpoenas,* Champion Dec. 1999 (same). Although we do not subscribe to the broader discovery standard advocated by the commentators, we agree that an absolute determination of admissibility at the subpoena stage is not warranted.

3090; Colo. Bar Assoc. Ethics Opinion 102, *supra.*

■ In addition to this basic test, subpoenas issued for materials which may be protected by a privilege or a right to confidentiality also require a balancing of interests. In such circumstances, the defendant must make a greater showing of need and, in fact, might not gain access to otherwise material information depending on the nature of the interest against disclosure. *See Martinelli v. Dist. Ct.,* 199 Colo. 163, 174, 612 P.2d 1083, 1091 (1980) (in civil discovery, requiring compelling state interest before allowing disclosure of constitutionally confidential information);[3] *Stone v. State Farm Mut. Auto. Ins. Co.,* 185 P.3d 150, 159 (Colo.2008) (in civil discovery, requiring compelling need before mandating disclosure of materials established as confidential by public policy); *People v. Walker,* 666 P.2d 113, 122 (Colo.1983) (in criminal discovery, applying *Martinelli* test); *People v. Dist. Ct.,* 719 P.2d 722, 727 & n. 3 (Colo.1986) (finding psychologist-client privilege absolute absent waiver, but also noting the defendant's failure to make a particularized factual showing). *But see People v. Wittrein,* 221 P.3d 1076, 1087–88 (Colo.2009) (Martinez, J., concurring in judgment) (arguing that, even in the absence of waiver of a privilege, a balancing is necessary of the defendant's due process rights and the need for the privilege).

The heightened sensitivity of protected information requires a proportionately greater showing of need before disclosure may be justified. *See* Edward J. Imwinkelried & Norman M. Garland, *Exculpatory Evidence* § 2–5 (3d ed.2004) (in discussing the right to present evidence at trial, picturing a sliding scale: "[t]he more compelling the accused's showing of need, the stronger the showing of countervailing government interests must be to defeat the accused's asserted constitutional right to introduce otherwise inadmissible evidence"). Thus, for example, generally inconsistent statements are less likely to be sufficiently probative than specific evidence

of recantation. *Cf. id.,* § 2–4.a(3) (discussing the distinction made in *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), between evidence of bias and a general attack on credibility).

We do not, however, adopt a mandate of in camera review, although such review may in some instances be necessary in the interest of due process. *Compare Pennsylvania v. Ritchie,* 480 U.S. 39, 58, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (requiring in camera review to determine materiality of confidential information in the possession of a state agency for which there was a statutory exception for certain judicial purposes), *with Dill v. People,* 927 P.2d 1315, 1323–24 (Colo.1996) (distinguishing *Ritchie* and not requiring in camera review of privileged psychologist-client records because *Dill* involved (1) information provided to a private psychologist, not a state agency, and (2) a comparatively narrow legislative exception).

Spykstra asserts that her constitutional rights would be violated if her subpoenas were quashed. Specifically, she invokes her right to cross-examination under the Confrontation Clause of the Sixth Amendment.

■ However, a defendant's due process and Sixth Amendment rights to present exculpatory evidence are not absolute. "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one...." *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). Further, the right to confrontation is a trial right; it is not "a constitutionally compelled rule of pretrial discovery." *Ritchie,* 480 U.S. at 52, 107 S.Ct. 989 (plurality opinion). Accordingly, in guaranteeing an opportunity for effective cross-examination, the Confrontation Clause does not guarantee "access to every possible source of information relevant to cross-examination." *Dill,* 927 P.2d at 1322 (citing *Ritchie,* 480 U.S. at 53–54, 107 S.Ct. 989, and

---

**3.** We note that *Martinelli* derives its test in large part from a Florida opinion overruled by that state's high court shortly after our reference to it. *See Byron, Harless, Schaffer, Reid & Assocs., Inc. v. State ex rel. Schellenberg,* 360 So.2d 83 (Fla.

Dist.Ct.App.1978), *quashed sub nom. Shevin v. Byron, Harless, Schaffer, Reid & Assocs., Inc.,* 379 So.2d 633 (Fla.1980). But, the underlying principles upon which *Martinelli* is founded remain in force.

*Dist. Ct.*, 719 P.2d at 726–27); *see also People v. Turner*, 109 P.3d 639, 646–47 (Colo. 2005).

Nevertheless, compulsory process and due process may require pretrial access to evidence which may be material to the defense. As is often the case with constitutional guarantees, competing interests must be balanced. Here, Crim. P. 17(c) strikes the balance between a defendant's right to exculpatory evidence with the competing interests of a witness to protect personal information and of the government to prevent unnecessary trial delays and unwarranted harassment of witnesses. *See Lam*, 827 N.E.2d at 214; *In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir.1988) ("[Federal] Rule 17(c) implements the Sixth Amendment guarantee that an accused have compulsory process to secure evidence in his favor.").

### C. Errors in the Trial Court's Order of Enforcement

The preceding review of the scope and procedure of Crim. P. 17(c), as well as the interests involved, illuminates the flaws in the trial court's order in this case. Two serious errors require us to conclude that the trial court abused its discretion in modifying and ordering enforcement of the defendant's subpoenas.

 As an initial matter, the trial court's order improperly converted the subpoenas into the functional equivalent of search warrants by ordering B.G.'s parents to allow Spykstra, through her own computer forensic expert, to search their home and personal property rather than requiring the parents to produce the emails in court. Only after the defense expert searched the computer would the trial court review any privileges claimed by the parents. In creating this procedure, the trial court eliminated the very protections against unreasonable search and seizure that Crim. P. 17(c) provides, including the court's role in protecting the subpoenaed party from unreasonable or oppressive subpoenas.

The nature of the subpoenas as modified—compelling disclosure of electronic information stored on a personal computer—makes more evident the inappropriateness of the trial court order. Although "a personal computer's contents are not confidential by nature,"

> personal computers may contain a great deal of confidential data. Computers today touch on all aspects of daily life. As one commentator observed, "they are postal services, playgrounds, jukeboxes, dating services, movie theaters, daily planners, shopping malls, personal secretaries, virtual diaries, and more.[]" Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L.Rev. 531, 569 (2005). Very often computers contain intimate, confidential information about a person. *See, e.g., United States v. Andrus*, 483 F.3d 711, 718 (10th Cir.2007) ("A personal computer is often a repository for private information the computer's owner does not intend to share with others."); *United States v. Gourde*, 440 F.3d 1065, 1077 (9th Cir.2006) (en banc) (Kleinfeld, J., dissenting) ("[F]or most people, their computers are their most private spaces."). When the right to confidentiality is invoked, discovery of personal computer information thus requires serious consideration of a person's privacy interests.

*Cantrell*, 195 P.3d at 661. Here, the trial court gave the defendant unfettered access to every aspect of the parents' personal lives that is stored on their computer. This cannot be condoned. *See In re Weekley Homes, L.P.*, 295 S.W.3d 309, 317 (Tex.2009) ("Providing access to information by ordering examination of a party's electronic storage device is particularly intrusive and should be generally discouraged, just as permitting open access to a party's file cabinets for general perusal would be."). Under the circumstances, the trial court could not compel production of the computer itself. Rather, all that could be required of B.G.'s parents was production of the emails themselves in a form that was not burdensome.

 The second serious error was the trial court's failure to require Spykstra to show a specific factual basis demonstrating a reasonable likelihood that the emails Spykstra sought existed on the computer and con-

tained material evidence. Spykstra set forth no "factual predicate which would make it reasonably likely that the [computer] will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw." *People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924, 928 (1979).

Spykstra's attempt to narrow her initial and undeniably overbroad request cannot overcome the reality that nothing in the record before us, beyond Spykstra's own speculative belief, proves that such emails existed.[4] In fact, Spykstra had not even a "mere inkling" that the evidence existed. Henning, *Defense Discovery, supra*, at 67 (although advocating for a more lenient admissibility requirement than in *Nixon*, acknowledging that "a defendant must have more than a mere inkling about the contents of a third party's documents"). At oral argument, when asked to establish a basis for the belief that such evidence existed, defense counsel tellingly replied, "I can't point to anything in particular."

At best, Spykstra's subpoenas were premature. This is underscored by the lack of supporting evidence that the emails existed, the lack of specificity in providing a broad date range encompassing dates prior to the alleged assault and dates that had not even occurred at the time the subpoenas issued, and the inconsistency in describing the evidence sought.

The record before us suggests that Spykstra issued the subpoenas before she had received discovery from the prosecution and without conducting her own investigation of the facts. It appears that Spykstra issued the subpoenas based on nothing more than a hope of uncovering something to support her belief that B.G. had recanted or made inconsistent statements. Crim. P. 17(c) provides a means for the prosecution and defense to bring to trial evidence that is in the hands of third parties, not a tool for broad discovery. It is the moving party's responsibility—not the court's—to independently conduct her

own investigation and present witnesses or documents that demonstrate the likelihood that the evidence she intends to bring to court through Crim. P. 17(c) in fact exists. *Cf. Ritchie*, 480 U.S. at 58 n. 15, 107 S.Ct. 989 (holding that a defendant cannot require in camera review of the confidential file "without first establishing a basis for his claim that it contains material evidence"); *People v. Turley*, 870 P.2d 498, 502 (Colo.App.1993) (holding that the trial court was not required to conduct an in camera review of statutorily confidential information where the existence of the records was speculative and not established and defendant failed to demonstrate materiality).

Contrast the lack of showing made by Spykstra with the facts of *Commonwealth v. Lam*. After reviewing pretrial discovery documents, the *Lam* defendant uncovered facts to support the theory that the complainant had fabricated her allegations and that her parents were cooperating with the prosecution to avoid facing their own charges. *Lam*, 827 N.E.2d at 211–12. With this information, the defendant successfully moved the district court for summons pursuant to that state's counterpart to Crim. P. 17(c) for various items, including a summons to the victim's father for the victim's journals and emails concerning sexual abuse. *Id.* at 212 n. 3, 213.

Applying the *Nixon* test, the Massachusetts Supreme Judicial Court ordered production of the journals and emails because the existence of the information had been substantiated and had been shown to have clear evidentiary value. *Id.* at 215–16. Specifically, the victim had acknowledged that she had recorded in her journals the dates of her alleged abuse. *Id.* It was also known that the victim first complained of her abuse in an electronic communication to another child. *Id.* at 216. This did not mean, however, that a privilege might not still prevent disclosure of the requested materials. *Id.* at 216 n. 10.

4. We recognize that the parents did not file an affidavit in support of the motion to quash, and they were not permitted to testify at the motions hearing. However, the prosecution's reply brief

and the amicus briefs for the parents, the victim, and the Colorado District Attorney's Council all argue a failure to substantiate the existence of emails from B.G. to her parents about this case.

Thus, in *Lam*, unlike here, the defendant was able to show the requested materials existed. The *Lam* defendant, having already reviewed the prosecution's pretrial discovery, had a more than sufficient basis to believe that the materials contained specific information with evidentiary value. By contrast, here, Spykstra's subpoenas were nothing more than an attempt to conduct exploratory discovery. Given the inadequate factual basis for the existence of the emails, it follows that the remainder of the requisite unreasonable-or-oppressive analysis cannot be satisfied.

We recognize that on remand, Spykstra may attempt to reissue subpoenas compliant with Crim. P. 17(c) for emails similar to those the trial court ordered to be disclosed. This will necessarily raise the question of whether the parents have a right to confidentiality in such emails, an issue addressed by several of the briefs in this case. However, because of the posture in which this case was presented, we do not address the confidentiality of the emails ordered to be disclosed or whether it precludes disclosure. The issue of confidentiality in the emails that Spykstra sought was not briefed or argued to the trial court. Rather, the motion and hearing below focused almost exclusively on standing, the method and form of compliance, and the protected nature of other, irrelevant information stored on the computer, which, as this opinion explains, should have remained protected from disclosure regardless of whether the emails Spykstra sought were ultimately produced.

In reviewing the trial court's errors, we do not overlook the availability of modification of a subpoena where the right to confidentiality might adequately be protected while at the same time giving the defendant needed access. However, the speculative nature of the subpoenas in this case cannot be remedied.

## V. Conclusion

The District Attorney has standing to challenge the defendant's third-party subpoenas duces tecum. However, the trial court abused its discretion in ordering enforcement of the subpoenas (1) by converting the subpoenas into the functional equivalent of a search warrant and (2) by failing to require the defendant to show a reasonable likelihood that the evidence sought existed and was relevant and evidentiary. Because the subpoenas were unreasonable and oppressive, we make the rule absolute and direct the district court to quash the subpoenas duces tecum served upon B.G.'s parents.