23CA1163 Peo v Mullins 09-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1163
El Paso County District Court No. 22CR4100
Honorable Jessica L. Curtis, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lance Finas Mullins,

Defendant-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Claire Pakis, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Lance Finas Mullins, appeals the restitution order entered following his guilty plea to second degree assault.  We affirm.

## I.     Background

¶ 2     Mullins pleaded guilty to second degree assault in exchange for the dismissal of four additional charges.  The charges were based on allegations that Mullins had hit, kicked, and strangled his girlfriend.  As part of his plea agreement, Mullins agreed to pay restitution, including for dismissed charges, and stipulated to causation.

¶ 3     At sentencing, the district court ordered Mullins to pay restitution but reserved a determination of the amount owed.

¶ 4     The prosecution requested $2,108.65 in restitution for payments made by the Crime Victim Compensation Board (CVCB) to Mullins's girlfriend.

¶ 5     Mullins objected and requested a hearing.  He subsequently filed a request for disclosure of the documentation supporting the CVCB payments, arguing that it was necessary to ensure he proximately caused the losses.  In the motion, Mullins recognized that, per section 24-4.1-107.5, C.R.S. 2025, the defense must

present a nonspeculative evidentiary hypothesis to support an in camera review of CVCB records.

¶ 6      At a status hearing, defense counsel again argued for disclosure of the supporting documentation:

> I did receive one bill for radiology, but, again, I'm just really hampered, because right now it just says victim's comp, and I think in order to effectively be able to contest the amount, I need to know the breakdown of what went where and for what services.  Is this reimbursement for insurance?  [F]or an ambulance ride?  [F]or something completely different?  It's a black box, and I don't know what's in it.

Counsel went on to identify the evidentiary hypothesis for the disclosure:

> [T]he evidentiary hypothesis is that there may be things in there — because at the end of the day, what we are talking about at this point in the litigation, I think, is monetary and what services, so I think that there may be things in [Mullins's case] that either go to services rendered that were not proximately caused by [Mullins] and/or services rendered that are now — restitution is being requested for that are for other services that may or may not be something related to this case.
>
> So, you know, part of this is asking me to speculate on what the documents might be when I don't know what they are, but . . . for example, in Mr. Mullins'[s] case, Mr. Mullins

and the victim, who was his former wife, had had a long and documented history, and I am concerned that there may have been things requested that did not have to do with [this] case, that went beyond that, given the ups and downs and I think tumult of their relationship.

¶ 7    The district court took the matter under advisement.

¶ 8    At another status hearing, the district court denied Mullins's request for disclosure of the CVCB documents, finding that he had failed to establish a "nonspeculative evidentiary hypothesis" to warrant disclosure.  The court, however, ordered the prosecution to provide Mullins with "a list of the amount of money paid to each provider by the [CVCB], or if the prosecution is claiming that the identity or location of a provider would pose a threat to the safety or welfare of the victim, summary data reflecting what total payments were made for."

¶ 9    The prosecution provided the CVCB's claim payment summary to the defense.  The summary included the amounts paid to and

identities of the victim's medical providers but excluded the identity of the victim's mental health provider.[1]

¶ 10     At the restitution hearing, defense counsel acknowledged having received the claim payment summary from the prosecution. Nonetheless, counsel renewed Mullins's request for disclosure of the CVCB documentation. She urged the district court to release the documents so that she could have "a meaningful opportunity to challenge the request for restitution" and protect Mullins's due process rights. The district court maintained its ruling and proceeded with the hearing.

¶ 11     The victim compensation administrator for the CVCB testified for the prosecution. She explained the application process for reimbursement of a victim's expenses, as well as the process for

---

[1] We note that the CVCB's claim payment summary provided to the defense showed total "Medical Payments" of $2,108.65, which was the full restitution amount requested by the prosecution and ordered by the district court. However, the summary also separately showed total "Mental Health Counseling" costs of $90, for a grand total of $2,198.65, which is more than the prosecution requested and more than the court ordered. It is therefore apparent from the record that the prosecution didn't seek restitution for the victim's mental health counseling and only did so for her medical treatment; nor did the court order restitution for mental health counseling. Accordingly, we need not address the parties' arguments regarding the mental health counseling costs.

ensuring "there is a nexus between the bills and payments requested and the crime that occurred." She said that these processes were followed in Mullins's case. The administrator confirmed that "what was requested by the victim in this case was related to the underlying crime." On cross-examination, she explained that, while she didn't personally establish the correlations between the police report and the medical bills, the CVCB did. The administrator also indicated that she didn't know if the victim used insurance to pay for some of the medical bills even though the CVCB is statutorily required to identify collateral resources.

¶ 12    The prosecution argued that section 18-1.3-603(10)(a), C.R.S. 2025, creates a rebuttable presumption that "if, as a result of the defendant's conduct, a [CVCB] has provided assistance to or on behalf of a victim, the amount of assistance provided and requested by the [CVCB] is presumed to be a direct result of the defendant's criminal conduct." Defense counsel argued that she was unable to rebut this presumption because she still didn't have access to the supporting documentation for the restitution request.

¶ 13    The district court reiterated that it "was not provided a nonspeculative evidentiary hypothesis by the Defense that would

5

necessitate an in camera review of the [CVCB] full discovery records" and it didn't "think the full discovery [wa]s permissible under the current state of the law." The court found that the administrator's testimony was credible and that the defense had failed "to rebut the presumption that there's a proximate causal link between the strangulation of the victim by Mr. Mullins that he's pled guilty to and the restitution that's being sought by the [CVCB]." The court further found that the prosecution met its burden of proving a causal link between Mullins's conduct and the restitution sought by the CVCB. The court granted the prosecution's request and ordered restitution in the amount of $2,108.65.

## II.    Discussion

¶ 14    Mullins contends that the district court abused its discretion by refusing to conduct an in camera review of the documents submitted to the CVCB to support the prosecution's restitution request. He claims that the court's refusal to conduct an in camera review "made it impossible for [him] to exercise his due process right to rebut the mandatory presumption that all CVCB payments are proper." We disagree.

## A. Standard of Review and Applicable Law

¶ 15 A district court's refusal to conduct an in camera review of CVCB documents is reviewed for an abuse of discretion. *People v. Fregosi*, 2024 COA 6, ¶ 51. We review de novo whether the court violated the defendant's right to due process. *People v. Calderon*, 2014 COA 144, ¶ 23.

¶ 16 Criminal defendants must "make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(b), C.R.S. 2025. "Restitution" means "any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct . . . that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2025.

¶ 17 When a CVCB pays a victim's claim for losses, it may recover that amount from a defendant. § 18-1.3-602(4)(a)(IV); *People v. Martinez-Chavez*, 2020 COA 39, ¶ 13.

¶ 18 "In a restitution proceeding, the prosecution bears the burden of proving by a preponderance of the evidence not only the victim's losses, but also that the victim's losses were proximately caused by the defendant's criminal conduct." *Martinez-Chavez*, ¶ 14. But the amount of restitution requested by the CVCB is presumed to be a

7

direct result of the defendant's criminal conduct.

§ 18-1.3-603(10)(a). Accordingly, once a CVCB has established that it has paid a victim a certain amount, a defendant has the burden to present evidence showing that the amount paid was not the direct result of his criminal conduct. *People v. Henry*, 2018 COA 48M, ¶ 19.

¶ 19 The amount of assistance that a CVCB provided to a victim may be established by either (1) a list of the amount of money paid to each provider; or (2) if the identity or location of a provider would pose a threat to the safety or welfare of the victim, summary data reflecting what total payments were made for. § 18-1.3-603(10).

¶ 20 The records kept by a CVCB "relating to [the] claimed amount of restitution" are confidential. *Henry*, ¶ 28 (first quoting § 18-1.3-603(10)(c); and then citing § 24-4.1-107.5(2)). But a defendant may obtain an in camera review of CVCB records if he demonstrates that his request for such a review is "not speculative" and "is based on an evidentiary hypothesis that warrants an in camera review to rebut the presumption established in section 18-1.3-603." *Id.* at ¶ 29 (quoting § 24-4.1-107.5(3)).

¶ 21    After conducting an in camera review, a district court may release additional information contained in the records only if it finds that the information "[i]s necessary for the defendant to dispute the amount claimed for restitution" and "[w]ill not pose any threat to the safety or welfare of the victim, or any other person whose identity may appear in the board's records, or violate any other privilege or confidentiality right."  § 24-4.1-107.5(3)(a)-(b).

### B.    Analysis

#### 1.    In Camera Review

¶ 22    Mullins argues that the district court erred by denying his request for an in camera review of the CVCB documents because he established a nonspeculative evidentiary hypothesis: that the "long and documented history" between him and the victim created the possibility that the requested amounts related to "other incidents" and thus the expenses weren't proximately caused by his actions in this case.  We aren't persuaded.

¶ 23    As in *Fregosi,* Mullins "presented no evidence or information that the victim received medical or mental health treatment unrelated to the conduct for which he was convicted." *Fregosi,* ¶ 56.  For example, if Mullins wished to rely on his history of

9

domestic abuse with his girlfriend to establish an evidentiary hypothesis, he could have supplied the court with information regarding the supposed "other incidents" that occurred before the incident at issue here. But he didn't. His hypothesis that the "long and documented history" between him and the victim could have shown that the requested amounts related to "other incidents" is speculative at best because Mullins presented no evidence or information that the victim suffered injuries possibly requiring medical treatment prior to the incident at issue. *See People v. Rivera*, 250 P.3d 1272, 1277 (Colo. App. 2010) (finding the defendant's evidentiary hypothesis that the victim "must have had previous mental health problems" speculative "because there [wa]s no evidence that [the victim] received counseling prior to [the defendant's] sexual assault"). And the only record evidence of previous incidents are references in the arrest warrant affidavit to mandatory protection orders issued against Mullins in 2017 and 2018 with his girlfriend as the protected party. But, again, Mullins didn't present these as evidence or information that there were "other incidents" possibly related to the medical payments.

¶ 24    Nor did Mullins "offer an evidentiary hypothesis to the [district] court that would have shown *how* the records would have rebutted section 18-1.3-603(10)(a)'s rebuttable presumption." *Henry,* ¶ 30 (emphasis added).  For example, he didn't allege "*how* [the CVCB] records would have shown" that the victim's medical payments "were not a direct result of [his] criminal conduct." *Id.* (emphasis added).  Mullins contends that he satisfied this requirement by

> alleg[ing] how the CVCB records would have shown that the victim's medical costs "were not a direct result of [Mr. Mullins's] criminal conduct" when trial counsel explained to the court that Mr. Mullins and the victim had a long and documented history of physical altercations such that in camera review was required to ensure that the services received by the victim were related to this *specific case.*

¶ 25    But he still didn't allege how the CVCB records would have shown that the services the victim received weren't related to this case when there was no evidence that the victim sustained injuries prior to the incident at issue.

¶ 26    Essentially, Mullins "alleged nothing more than that he needed or wanted additional information." *Fregosi,* ¶ 56.  But "[i]f a litigant fails to show 'a specific factual basis demonstrating a reasonable likelihood' that the discovery will yield material evidence, the

request for in camera review is properly denied." *Id.* (quoting *People v. Spykstra*, 234 P.3d 662, 671 (Colo. 2010)). Mullins's reference to a "long and documented history" between him and the victim and his suggestion that there were "other incidents" don't satisfy this requirement.

¶ 27 Mullins relies on *People v. Hernandez*, 2019 COA 111, for the assertion that the standard for establishing a nonspeculative evidentiary hypothesis is low and that he satisfied this low standard because he

> presented the court with (1) evidence, by way of a radiology bill, that the CVCB had records related to the monetary award for medical costs, and (2) Mr. Mullins needed access to those records to determine whether the amount of money awarded was a proximate result of his criminal conduct in this case given his "long and documented history" with the victim.

¶ 28 In *Hernandez*, the division addressed the defendant's facial constitutional challenge to section 18-1.3-603(10), which establishes the rebuttable presumption for CVCB payments. *Hernandez*, ¶¶ 53-60. In determining that the statute isn't unconstitutional in all its applications, the division gave an example

12

of an evidentiary hypothesis that the defendant could have presented:

> Consider the "Claimant Payment Summary" introduced during the restitution hearing. It included the names of two payees — Heather L. Rogers and SCL Health System — along with the amounts paid and the dates of payments. As to Ms. Rogers, who is not otherwise identified, because the payment could have been for anything, forming an "evidentiary hypothesis" might be difficult. In contrast, as to SCL, knowing that the victim had suffered a knife wound and that SCL is a health care provider, Hernandez could have easily formed such an hypothesis: "Defendant needs to discover the nature and dates of the medical services provided to ascertain the nexus, if any, to the injury sustained."

*Id.* at ¶ 59.

¶ 29    While it's true that the example given by the *Hernandez* division lends itself to a low standard for establishing a nonspeculative evidentiary hypothesis, we don't perceive this as greenlighting Mullins's hypothesis. *Fregosi* and *Henry* require more — that the defendant present evidence or information that the victim received medical treatment unrelated to the conduct for which he was convicted and/or that he explain how the CVCB records would have rebutted section 18-1.3-603(10)(a)'s rebuttable

presumption.  *See Fregosi*, ¶ 56; *Henry*, ¶ 30.  Mullins's hypothesis did neither.[2]  Nor did it "show 'a specific factual basis demonstrating a reasonable likelihood' that the discovery [of the CVCB documents] will yield material evidence."  *Fregosi*, ¶ 56 (quoting *Spykstra*, 234 P.3d at 671).  And to the extent the hypothetical in *Hernandez* articulated a lower evidentiary threshold than *Fregosi* and *Henry*, we agree with standard outlined in the latter cases.  *See People v. Thomas*, 195 P.3d 1162, 1164 (Colo. App. 2008) (one division of this court isn't bound by the decision of another division).

¶ 30    Mullins also asserts that "[s]ection 24-4.1-107.5 creates a Catch-22 situation: a defendant must present a non-speculative evidentiary hypothesis to obtain in camera review of information held by a CVCB, yet doing so may be impossible without knowing

---

[2] Although in his briefing to us Mullins argues that he presented a radiology bill to the district court as evidence, we can't ascertain from the record where this occurred.  In his objection to restitution, he references a radiology bill he received in discovery.  And at one of the status conferences, Mullins explained that he had received a radiology bill, but he didn't present the bill to the court.  Nor did he argue that this bill related to an incident other than the one at issue.  He merely questioned the breakdown of the expense because of the bill's lack of specificity.

the information held by the CVCB." But this argument was dispelled in *Hernandez*. There, the defendant argued that "to obtain an in camera review of information held by the CVCB, he must present 'an evidentiary hypothesis.' Yet, without knowing what information the CVCB has, . . . he cannot present such a hypothesis." *Hernandez*, ¶ 55 (quoting § 24-4.1-107.5(3)). The division rejected this argument, concluding that the defendant had an evidentiary hypothesis available to him that would have passed muster. *Id.* at ¶ 59. Likewise, here, Mullins could have presented a nonspeculative evidentiary hypothesis that would have warranted an in camera review of the CVCB records if he had presented evidence or information that the victim received medical treatment unrelated to the conduct for which he was convicted and/or explained how the CVCB records would have rebutted section 18-1.3-603(10)(a)'s rebuttable presumption. *See Fregosi*, ¶ 56; *Henry*, ¶ 30.

¶ 31    Accordingly, we conclude that Mullins's insufficient and speculative evidentiary hypothesis doesn't meet the statutory requirements for an in camera review of the CVCB records.

Therefore, the district court did not abuse its discretion by denying the in camera review.

## 2. Due Process

¶ 32    We also conclude that Mullins's due process rights weren't violated. Due process is satisfied, in the restitution context, when the defendant receives notice of the factual basis for restitution and a reasonable opportunity to contest that basis. *See People v. Perez*, 2020 COA 83, ¶ 49, *overruled on other grounds by People v. Weeks*, 2021 CO 75, ¶ 47 n.16.

¶ 33    Mullins was on notice of the factual basis for the restitution request. The prosecution timely filed a restitution request and subsequently filed a claim payment summary from the CVCB. This summary listed the amount of restitution sought and the payees on whose behalf it was being sought.

¶ 34    Mullins had a reasonable opportunity to contest the factual basis of the restitution request by requesting an in camera review under section 24-4.1-107.5. That he failed to meet the statutory requirements for an in camera review of the CVCB records doesn't amount to a due process violation. *See Hernandez*, ¶¶ 59-60.

### III.  Disposition

¶ 35    The restitution order is affirmed.

JUDGE GOMEZ and JUDGE SULLIVAN concur.