The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 18, 2024

## 2024COA6

**No. 21CA0116, *People v. Fregosi* — Criminal Law — Sentencing — Restitution — Procedural Deadlines — "Good Cause" to Extend Trial Court's Deadline — Actual Costs of Specific Future Treatment**

A division of the court of appeals clarifies the relationship between sections 18-1.3-603 (1)(b) and (1)(c) following *People v. Weeks*, 2021 CO 75 and holds that a district court that defers a restitution determination for ninety-one days under subsection (1)(b) may further extend that deadline under subsection (1)(c) when a victim incurs ongoing therapy expenses. The division also concludes that sufficient evidence supports the district court's decision not to review in camera or to disclose the Crime Victim Compensation Board records.

COLORADO COURT OF APPEALS      **2024COA6**

Court of Appeals No. 21CA0116
Weld County District Court No. 19CR2209
Honorable Marcelo A. Kopcow, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Alexander Ryan Fregosi,

Defendant-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE FREYRE
Yun and Kuhn, JJ., concur

Prior Opinion Announced November 30, 2023, <u>WITHDRAWN</u>

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON November 30, 2023, IS NOW DESIGNATED FOR
PUBLICATION

Announced January 18, 2024

Philip J. Weiser, Attorney General, Frank R. Lawson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Mackenzie R. Shields, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Alexander Ryan Fregosi, appeals the district court's restitution order.  We affirm.

## I.     Background

¶ 2     Fregosi pleaded guilty to menacing as an act of domestic violence, a class 5 felony, in exchange for the dismissal of two other counts.  As part of his plea agreement, he acknowledged that "[t]he People reserve[d] restitution" and that he "stipulate[d] to [a] factual basis."

¶ 3     The court accepted the plea agreement and confirmed that Fregosi understood its terms.  The court found Fregosi's plea was knowing, intelligent, and entered without undue influence or coercion.  The court then set the matter for a sentencing hearing.

¶ 4     The court sentenced Fregosi to three years in the custody of the Department of Corrections.  During the hearing, the prosecutor asked for ninety-one days to seek restitution.  The court asked defense counsel if he had any objection, and counsel responded, "No, Judge."  The court granted the prosecutor's request.

¶ 5     Fifty-one days later, the prosecutor requested $873.10 in restitution for the victim's medical and therapy costs accrued to date.  Additionally, the prosecutor said he believed further

restitution would be forthcoming and asked the court to reserve future restitution under section 18-1.3-603(1)(c), C.R.S. 2023, to account for the victim's future treatment costs.

¶ 6      The court gave Fregosi twenty-one days to object to the motion.  Fregosi did not object or otherwise respond to the motion. Therefore, on May 28, 2020 (seventy-three days after sentencing), the court ordered Fregosi to pay $873.10 in restitution to the Crime Victim Compensation Board (CVCB).  The order further stated, "Pursuant to C.R.S. § 18-1.3-603, in addition to the specific amount of restitution listed in this order, the defendant shall be required to pay the actual costs of specific future treatment of any victim of the crime, if applicable."

¶ 7      Subsequently, the prosecution filed thirteen amended restitution requests seeking compensation for the victim's ongoing therapy costs.  Fregosi objected to the amended requests.  Among other things, he objected to the court entering any orders beyond the ninety-one-day deadline without making express and timely good cause findings.

¶ 8      The court granted all the amended requests.  In each of its orders, the court indicated that, under section 18-1.3-603, it

reserved final determination of restitution to account for the costs of the victim's ongoing treatment. And at each hearing, the court reiterated its intent to reserve the final restitution determination under section 18-1.3-603.

¶ 9 At a December 2021 restitution hearing, the CVCB coordinator reported that the victim had reached the limit of therapy sessions covered by the CVCB. The court then entered a final restitution order in the amount of $4,473.10.[1]

## II. Restitution

¶ 10 Fregosi contends that the district court lacked the authority to grant the prosecutor's requested amount of restitution seventy-three days after sentencing because (1) the prosecutor failed to file the information necessary to support restitution before the judgment of conviction entered, as required by section 18-1.3-603(2); and (2) the court failed to enter a specific order at

---

[1] Before the final restitution hearing, the prosecutor filed a motion to clarify the total restitution amount due to a calculation error. The motion sought to correct the final restitution amount to a total of $4,923.10. After the hearing, the prosecutor filed a second motion asking to correct another error. This correction brought the total to $4,473.10, which is the final restitution amount the court entered.

sentencing under section 18-1.3-603(1). We address and reject both contentions.

### A. Standard of Review and Applicable Law

¶ 11 Questions of statutory interpretation and whether a district court has authority to order a defendant to pay restitution are legal questions that we review de novo. *People v. Weeks*, 2021 CO 75, ¶ 24; *People v. Roddy*, 2021 CO 74, ¶ 23.

¶ 12 The restitution statute provides, in pertinent part, as follows:

> (1) Every order of conviction of a felony . . . shall include consideration of restitution. Each such order shall include one or more of the following:
>
> (a) An order of a specific amount of restitution be paid by the defendant;
>
> (b) An order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined;
>
> (c) An order, in addition to or in place of a specific amount of restitution, that the defendant pay restitution covering the actual costs of specific future treatment of any victim of the crime; or
>
> (d) Contain a specific finding that no victim of the crime suffered a pecuniary loss and

4

therefore no order for the payment of restitution is being entered.

(2)(a) The court shall base its order for restitution upon information presented to the court by the prosecuting attorney, who shall compile such information through victim impact statements or other means to determine the amount of restitution and the identities of the victims. Further, the prosecuting attorney shall present this information to the court prior to the order of conviction or within ninety-one days, if it is not available prior to the order of conviction. The court may extend this date if it finds that there are extenuating circumstances affecting the prosecuting attorney's ability to determine restitution.

. . . .

(3) Any order for restitution may be:

(a) Increased if additional victims or additional losses not known to the judge or the prosecutor at the time the order of restitution was entered are later discovered and the final amount of restitution due has not been set by the court . . . .

§ 18-1.3-603.

¶ 13     Every judgment of conviction must include one or more of the four types of restitution orders outlined in section 18-1.3-603(1). *Weeks*, ¶ 3. Section 18-1.3-603(1) does not permit the district court "to address the issue of restitution in a judgment of conviction

by entering an order deferring that issue in its entirety." *Id.* at ¶ 30. Nor does it allow the prosecution "to ask that the issue of restitution (not just the amount of restitution) 'remain open' for any period of time after the judgment of conviction enters." *Id.*

¶ 14     Further, under section 18-1.3-603(2), the prosecutor must move for restitution before or during the sentencing hearing and present the information supporting a proposed amount of restitution before the judgment of conviction is entered, if it is then available. *Id.* at ¶¶ 30-31. If that information is not available, the prosecution may submit it no later than ninety-one days after the judgment of conviction enters. *Id.* And the district court may extend this ninety-one-day deadline if — before the deadline expires — it expressly finds extenuating circumstances affecting the prosecution's ability to determine restitution. *Id.* at ¶ 40.

¶ 15     Any failure to comply with these provisions bars the district court from awarding restitution. *Id.* at ¶ 45.

### B.     Initial Restitution Request

¶ 16     Fregosi maintains that the district court lacked the authority to grant the ninety-one-day extension because the prosecution had access to, but failed to present, information supporting its initial

restitution request at the time of sentencing. We disagree and conclude that he waived the issue. We further conclude that even if he did not waive the issue, the record shows that the restitution information was not available at the time of sentencing.

### 1. Waiver

¶ 17 Waiver is the intentional relinquishment of a known right or privilege. *People v. Roberson*, 2023 COA 70, ¶ 24. Although a waiver can be implied, the conduct must be unequivocal and clearly manifest an intent to relinquish the claim. *Phillips v. People*, 2019 CO 72, ¶ 21. The mere failure to raise an issue does not suffice. *Id.* We indulge every reasonable presumption against waiver. *Id.* In "[a]nswering a question not addressed by the Colorado Supreme Court in [*Weeks*]," a division of this court recently held that a district court's ninety-one-day deadline for entry of restitution under section 18-1.3-603(1)(b) is not jurisdictional and is therefore waivable. *People v. Babcock*, 2023 COA 49, ¶¶ 1, 5-11.

¶ 18 We find *People v. Johnson*, 2023 COA 43M, instructive concerning waiver. There, the division determined that, under *Weeks*, a plea agreement provision giving the prosecutor additional time to submit restitution information serves "as both a motion for

restitution and the parties' acknowledgment that restitution information was not available before the conviction." *Johnson,* ¶ 24. When the prosecution subsequently files its restitution motion within ninety-one days, the prosecution has "met its obligation under subsection (2)" of section 18-1.3-603. *Id.*

¶ 19 Here, as in *Johnson,* Fregosi agreed to pay restitution, and "[t]he People reserve[]d restitution" in the plea agreement. *Id.* at ¶ 6; *see also id.* at ¶¶ 35-39 (Welling, J., specially concurring) (concluding that the defendant, by the terms of his plea agreement, waived any challenge to the prosecution's deadline in section 18-1.3-603(2) to provide restitution information to the court before judgment of conviction enters). Thus, simply by the terms of the plea agreement, Fregosi waived this issue.

¶ 20 But even if we look beyond the terms of the plea agreement, the record shows that Fregosi clearly and unequivocally waived this argument when defense counsel stated at sentencing that he had no objection to the prosecution's request for a ninety-one-day extension. *Phillips,* ¶ 21.

¶ 21 Accordingly, Fregosi's challenge to the timeliness of the prosecution's requested restitution amount fails.

## 2. Restitution Information Was Not Available at Sentencing

¶ 22    Even assuming Fregosi had not waived this issue, we conclude that the record shows the restitution information was not available to the prosecution at the time of sentencing.

¶ 23    Fregosi argues that the dates of the service provider's bills were the dates that the prosecution should have had the information to request restitution. But that is not how CVCB claims are processed. Indeed, as the CVCB coordinator testified, the CVCB negotiates medical and mental health bills with each service provider. Thus, the amount the CVCB ultimately pays is different from the service provider's original bill.

¶ 24    Here, the record shows that disbursements for the victim's mental health therapy were not approved until April 2020 — one month after sentencing. The record further shows that the victim's medical bills were still being processed by the CVCB in early May 2020 — two months after sentencing.

¶ 25    Accordingly, because the prosecution did not have the information, it had ninety-one days to present that information. *See* § 18-1.3-603(2)(a).

## C. Subsequent Restitution Orders

¶ 26    We next consider and reject Fregosi's contention that the district court erred by granting the amended restitution requests because it did not make the express good cause findings necessary to extend the ninety-one-day deadline. We disagree for three reasons.

¶ 27    First, no provision in the restitution statute precludes a court that deferred its restitution determination under subsection (1)(b) from later finding good cause (under subsection (1)(b)) and extenuating circumstances (under subsection (2)(a)) to further extend the statutory deadline under subsection (1)(c) within the initial ninety-one-day period. Fregosi's assertion that the court's subsection (1)(c) order could only be given effect if it were entered at sentencing contradicts subsection (1)(c)'s purpose of accounting for unknown costs to be ascertained during the initial period.

¶ 28    Second, neither *Weeks* nor *Meza v. People*, 2018 CO 23, demands a contrary conclusion. Indeed, in its discussion of compensation for ongoing treatment under section 18-1.3-603(3)(a), the *Weeks* court observed that when a court enters a subsection (1)(b) order requiring a partial amount of restitution but defers the

final amount of restitution and later invokes subsection (3)(a) to increase the amount of restitution, the court — though still bound to determine the final amount of restitution within ninety-one days of the judgment of conviction — may, alternatively, make its determination "within whatever expanded time period the court has established upon a finding of good cause." *Weeks*, ¶ 36; *see also Meza*, ¶ 14 ("While perhaps less express, paragraph (b), permitting an order that the defendant is obligated to pay restitution but that the specific amount of that restitution is to be determined later, contains nothing actually precluding the court from making findings at sentencing with regard to particular victims or losses of which the prosecution is aware, while reserving until a later date, within ninety-one days, findings with regard to other victims or losses of which the prosecution is not yet aware.").

¶ 29    Finally, the record shows that the court complied with the requirements of section 18-1.3-603(1). During sentencing, the prosecution requested, and the district court granted, a ninety-one-day period to determine restitution under section 18-1.3-603(1)(b). Before the expiration of the ninety-one-day deadline, the court entered an order under section 18-1.3-603(1)(c), reserving the issue

11

of future restitution costs to account for the victim's ongoing therapy treatment. The record further shows that the court reiterated its section 18-1.3-603(1)(c) order each time it granted the prosecution's amended restitution requests. Moreover, at each hearing, the court expressly indicated its intent to find good cause to reserve the final determination of restitution based on the victim's ongoing treatment. For example, at the third restitution hearing, defense counsel asked the court to clarify its restitution order. The court responded,

> [T]he victim has received future counseling expenses and if there's a need for her to get additional counseling expenses for mental health or otherwise than that's good cause for the court to consider restitution in the future based on this — assault that she suffered where there was physical and now mental health treatment necessary.

Thus, the court expressly stated that its orders finding that the victim had incurred future therapy expenses constituted good cause for extending the final determination of restitution beyond the statutory deadline.

¶ 30     Based on this record, we conclude that the court's express finding that the victim incurred ongoing treatment costs and

12

requiring Fregosi to pay those costs, constituted a valid restitution order under section 18-1.3-603(1)(c). *See Weeks*, ¶ 7 n.4 (noting that, under the restitution statute, "talismanic incantations" are not necessary, and "substance controls over form").

¶ 31     Because the court made a good cause finding in an order entered before the ninety-one-day deadline expired and that order was reiterated in each restitution order thereafter, we conclude that the court had the authority to extend the ninety-one-day deadline based on future losses accounted for in the subsequent restitution orders.

## III.   Disclosure of CVCB Records

¶ 32     Fregosi raises two challenges regarding disclosure of the CVCB records. He first contends that the prosecution failed to establish that the amounts paid by the CVCB were the direct result of his criminal conduct. Second, he contends that the district court erred by declining to conduct an in camera review of the CVCB records. We reject both contentions.

## A. Additional Facts

¶ 33    The prosecutor's amended restitution requests included CVCB summaries of the victim's ongoing therapy costs. The summaries excluded the identity of the victim's treatment provider.

¶ 34    In his objections to the amended restitution requests, Fregosi argued that the prosecution had not proved that his conduct was the proximate cause of the victim's loss. Specifically, he asserted that he needed the CVCB summaries to include the identity of the victim's treatment providers and requested an in camera review of the CVCB records.

¶ 35    The court denied Fregosi's requests in a written order. The court explained that Fregosi's purported evidentiary hypothesis for needing the CVCB records was speculative and did not warrant an in camera review. The court further found that releasing the records would pose a threat to the victim's welfare.

¶ 36    Fregosi reasserted these arguments at subsequent restitution proceedings. In response, the prosecutor elicited testimony from the CVCB coordinator who explained the CVCB's policy of excluding the identity of the victim's treatment provider in cases involving domestic violence. The CVCB coordinator also testified concerning

the application process for mental health reimbursement and the limitations on such requests and confirmed that these standards were followed in this case.

¶ 37    The court repeatedly found no error in the nondisclosure of the CVCB records based on its continued finding that disclosure would pose a risk to the victim's welfare.

## B.    Sufficiency

¶ 38    Framed as a sufficiency issue, Fregosi contends that the prosecution failed to establish that the amounts paid by the CVCB were the direct result of his criminal conduct because it relied exclusively on the CVCB payment summaries that did not include the identity of the victim's treatment provider or otherwise establish that including that information would pose a threat to the safety or welfare of the victim.  We are not persuaded.

### 1.    Standard of Review and Applicable Law

¶ 39    Generally, we review a trial court's restitution award for an abuse of discretion.  *People v. Gregory*, 2019 COA 184, ¶ 21.  A trial court abuses its discretion when it misconstrues or misapplies the law, or when its decision fixing the amount of restitution is not supported by the record.  *Id.*

15

¶ 40    But in a sufficiency challenge, we review the record de novo to determine whether the evidence was sufficient in both quantity and quality to support a restitution award. *People v. Barbre*, 2018 COA 123, ¶ 25; *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We evaluate "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused that amount of loss." *Barbre*, ¶ 25.

¶ 41    Convicted offenders must "make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(b), C.R.S. 2023. Restitution "means any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct . . . that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2023.

¶ 42    "Proximate cause in the context of restitution is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *People v. Rivera*, 250 P.3d 1272, 1274 (Colo. App. 2010).

16

¶ 43    Crime victims and their relatives may seek compensation from the CVCB for losses caused by criminal conduct.  §§ 24-4.1-102(1), -108, -109(1), C.R.S. 2023.  When a CVCB pays a victim compensation claim, it is a "[v]ictim" for purposes of the restitution statute.  § 18-1.3-602(4)(a)(IV).  Therefore, "[i]f a CVCB awards compensation to a victim or other qualifying person, the CVCB is eligible to seek and obtain restitution from a defendant in [a] criminal proceeding."  *People v. Martinez-Chavez*, 2020 COA 39, ¶ 13.

¶ 44    The prosecution must prove by a preponderance of the evidence that the defendant's conduct proximately caused the victim's loss and the amount of that loss.  *People v. Henry*, 2018 COA 48M, ¶ 15.  For CVCB claims, however, the restitution statute creates a rebuttable presumption that "the amount of assistance provided and requested by the [CVCB] is presumed to be a direct result of the defendant's criminal conduct and must be considered by the court in determining the amount of restitution ordered." § 18-1.3-603(10)(a); *see Martinez-Chavez*, ¶ 20.  The rebuttable presumption shifts the burden to the defendant to present evidence to show that the amount paid was not the direct result of their

criminal conduct. *Henry*, ¶ 19. "[I]f that burden is not met, [the presumption] establishes the presumed facts as a matter of law." *Id.* at ¶ 17 (quoting *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009)). To trigger the rebuttable presumption, however, the prosecution must establish the amount of assistance provided. *Martinez-Chavez*, ¶ 20.

¶ 45    The restitution statute prescribes two ways of establishing this amount: (1) "[a] list of the amount of money paid to each provider"; or (2) "[i]f the identity or location of a provider would pose a threat to the safety or welfare of the victim, summary data reflecting what total payments were made for." § 18-1.3-603(10)(b)(I)-(II).

### 2.    Analysis

¶ 46    We reject Fregosi's sufficiency challenge for three reasons. First, the record supports the court's determination that disclosing the identity of the victim's treatment provider would pose a risk to the victim. The victim expressed concern that disclosing additional information about her treatment providers would revictimize her and "bring[] up a lot of extra trauma for her." Additionally, the CVCB coordinator explained that, in the context of domestic violence cases, releasing this type of information can implicate

18

patient safety and welfare because doing so allows the offender to "basically look up that provider and know where [the victim] [is] going to be on that day and time."

¶ 47 Second, the record shows that the prosecution did not rely solely on the CVCB summaries. The prosecution presented testimony from the CVCB coordinator who explained how the CVCB processes claims and how this case met the statutory requirements. Additionally, the court also took judicial notice of the pre-sentence investigation report, the Crim. P. 11 paperwork, and Fregosi's arrest affidavit.

¶ 48 Finally, Fregosi offered no evidence to rebut the statutory presumption of causation, such as evidence of an alternate reason for the victim's ongoing therapy.

¶ 49 Accordingly, we conclude that sufficient evidence supports the court's findings and affirm the order.

## C. In Camera Review and Disclosure

¶ 50 Fregosi last contends that the district court erred in declining to conduct an in camera review of the CVCB records. We disagree.

19

### 1. Standard of Review and Applicable Law

¶ 51    A trial court's refusal to conduct an in camera review is reviewed for an abuse of discretion. *People v. Blackmon*, 20 P.3d 1215, 1220 (Colo. App. 2000).

¶ 52    The restitution statute's definition of "[v]ictim" includes any CVCB that has compensated a victim. § 18-1.3-602(4)(a)(IV). "[T]he amount of assistance provided and requested by the crime victim compensation board is presumed to be a direct result of the defendant's criminal conduct." § 18-1.3-603(10)(a). Moreover, the CVCB's records relating to the claimed amount of restitution are confidential. § 24-4.1-107.5(2), C.R.S. 2023. Consequently, "a defendant generally cannot obtain access to them." *Henry*, ¶ 28.

¶ 53    "But in restitution proceedings, section 24-4.1-107.5(3) creates a two-step process through which a defendant can obtain information in CVCB records." *People v. Hernandez*, 2019 COA 111, ¶ 17.

¶ 54    First, the defendant may ask the court to conduct an in camera review if the request "is not speculative and is based on an evidentiary hypothesis that warrants an in camera review" to rebut

the presumption established in section 18-1.3-603(10)(a). *Id.* (quoting § 24-4.1-107.5(3)).

¶ 55 Second, after conducting an in camera review, the court may release additional information contained in the records only if it finds that the information "[i]s necessary for the defendant to dispute the amount claimed for restitution" and "[w]ill not pose any threat to the safety or welfare of the victim, or any other person whose identity may appear in the board's records, or violate any other privilege or confidentiality right." § 24-4.1-107.5(3)(a)-(b).

2. Analysis

¶ 56 Here, Fregosi presented no evidence or information that the victim received medical or mental health treatment unrelated to the conduct for which he was convicted. Fregosi's only evidentiary hypothesis was that he needed the CVCB records

> to investigate and potentially litigate (a) whether the costs-as-alleged are primarily based upon outpatient mental-health services; (b) whether the costs were in-fact "proximately caused" by [Fregosi's] conduct, or rather are related in whole (or in part) to something besides [Fregosi's] conduct; or (c) whether the costs were something for which [the victim] was eligible to have insurance cover (in whole, or in part) etc.

Essentially, Fregosi alleged nothing more than that he needed or wanted additional information. If a litigant fails to show "a specific factual basis demonstrating a reasonable likelihood" that the discovery will yield material evidence, the request for in camera review is properly denied. *People v. Spykstra*, 234 P.3d 662, 671-72 (Colo. 2010). Accordingly, we conclude that Fregosi's insufficient and speculative evidentiary hypothesis does not meet the statutory requirements for an in camera review.[2] *See Rivera*, 250 P.3d at 1277 (concluding that defendant's request for an in camera review of the victim's medical records on the basis that the victim "must have had previous mental health problems" was speculative where there was no evidence presented that the victim received counseling before the crime).

## IV. Disposition

¶ 57    The restitution order is affirmed.

JUDGE YUN and JUDGE KUHN concur.

---

[2] Even assuming Fregosi's hypothesis were nonspeculative, based on our conclusion that the district court properly determined that disclosure of the CVCB records would pose a threat to the victim's welfare, the court had sufficient grounds upon which to deny the request.

22