23CA0966 Peo v Halbrooks 04-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0966
Mesa County District Court No. 22CR84
Honorable Matthew D. Barrett, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Rodney Halbrooks,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
ORDER AFFIRMED, AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 3, 2025

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    James Rodney Halbrooks appeals (1) the judgment of conviction entered on a jury verdict finding him guilty of felony menacing; (2) certain conditions of his probation sentence; and (3) the order of restitution imposed against him.  We affirm the judgment of conviction, reverse the portion of his sentence assigning him additional conditions of probation, affirm the restitution order, and remand for correction of the mittimus to remove the additional conditions of probation.

## I.    Background

¶ 2    The jury could reasonably have found the following facts from the evidence introduced at trial.

¶ 3    While walking down her street, the victim heard a man's voice behind her calling out, "Hey, where are you going?" and "Hey, come back here."  When she realized that the man was talking to her, she turned around and saw a man following her and pointing a long gun in her direction.  The man told the victim that he was going to shoot her.

¶ 4    The victim ran to a neighbor's house and knocked on the door.  When the neighbor answered the door, the man turned and walked away.  The victim called 911 and described the incident to the

1

responding officers.  She then suffered a stress-induced cardiac emergency and was taken to a hospital by ambulance.

¶ 5     When the officers arrived, Halbrooks emerged from his home — which was located on the same street as the victim's home — because he said he was curious about the heavy police presence in the neighborhood.  He admitted to the officers that he used a rifle to chase someone off his property earlier that afternoon.  Halbrooks explained that, because his property had been vandalized several times before, when he believed a woman had entered his property, he walked out and confronted her "with his .22 rifle" as a "show of force."  Halbrooks told the officers that he followed the woman for "a short ways," but when she knocked on the door of another house, he "turned around and went back to his house."  Officers searched Halbrooks's home and collected three rifles.

¶ 6     Halbrooks was charged with felony menacing, use of a weapon while intoxicated, and possession of a weapon by a previous offender.  The prosecution later dismissed the latter two charges.  The only charge before the jury was that for felony menacing.

¶ 7    At trial, Halbrooks's theory of defense was that he did not interact with or threaten the victim.  Instead, he asserted that he used a rifle to chase a different woman off his property.  Halbrooks testified that he had never seen the victim before trial and that, although he followed a different woman on the day of the incident, he never pointed the rifle at or threatened to shoot her.

¶ 8    A jury found Halbrooks guilty of felony menacing.  The court sentenced him to thirty months of supervised probation.  Based on a prior conviction in California involving unlawful sexual behavior, the court imposed additional conditions of probation for adult sex offenders.  The court also ordered Halbrooks to pay $2,600 in restitution.

## II.    Sufficiency of Evidence of Identity

¶ 9    Halbrooks contends that his conviction must be reversed because the prosecution failed to introduce sufficient evidence that he was the man who followed the victim.  We are unpersuaded.

### A.    Applicable Law and Standard of Review

¶ 10    "The Due Process Clauses of the United States and Colorado Constitutions require proof of guilt beyond a reasonable doubt on each of the essential elements of a crime." *People v. Duncan,* 109

3

P.3d 1044, 1045 (Colo. App. 2004). In deciding whether the prosecution presented sufficient evidence to support the defendant's conviction, we examine "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *People v. Donald,* 2020 CO 24, ¶ 18, 461 P.3d 4, 7 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).

¶ 11    To prove that Halbrooks committed the crime of menacing, the prosecution bore the burden of proving that Halbrooks knowingly, by any threat or physical action, placed or attempted to place another person in fear of imminent serious bodily injury. *See* § 18-3-206, C.R.S. 2024. Menacing is a felony if committed, as relevant here, "by the use of a firearm." *Id.*

¶ 12    A jury must generally find that the prosecution proved all elements of a charged offense — including identity — beyond a reasonable doubt. *See Gorostieta v. People*, 2022 CO 41, ¶ 18, 516 P.3d 902, 905; *see also People v. Watkins*, 553 P.2d 819, 821 (Colo. 1976) ("[T]he identity of the defendant as the perpetrator of the

4

crime charged is an element of the crime which must be proven beyond a reasonable doubt.").  But "[f]or the evidence to be sufficient[,] it is not essential that an identifying witness make a positive identification or that he be free from doubt as to the correctness of his opinion."  *People v. Jenkins*, 768 P.2d 727, 729 (Colo. App. 1988).  "Rather, uncertainty in identification is a matter of weight and witness credibility to be considered by the jury in reaching its determination."  *Id.*; *see also People v. Harland*, 251 P.3d 515, 519 (Colo. App. 2010).

¶ 13    A defendant may present a sufficiency of the evidence argument for the first time on appeal.  *McCoy v. People*, 2019 CO 44, ¶ 2, 442 P.3d 379, 382.  "When a defendant challenges the sufficiency of the evidence, '[w]e review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction.'"  *Johnson v. People*, 2023 CO 7, ¶ 13, 524 P.3d 36, 40 (quoting *Clark*, 232 P.3d at 1291).

### B. The Evidence Was Sufficient to Support Halbrooks's Conviction for Felony Menacing

¶ 14  Halbrooks contends that the prosecution failed to introduce sufficient evidence that he was the man who followed the victim because the testimony of the prosecution's witnesses either involved impermissibly suggestive identification procedures or had minimal evidentiary value.

¶ 15  The jury heard the following evidence of identity.

¶ 16  The prosecution introduced into evidence the victim's 911 call, in which she described the person who followed her as a white man with a gray beard, gray hair, and "maybe a tattoo." At trial, the victim testified that the man was "thinner," with "long-ish, messy hair." Although the victim testified that she is legally blind, she said, "[I]f I blink, I have a second of clarity. But otherwise, it just gets staticky again. I have to keep blinking it away."

¶ 17  The neighbor testified that the man might have been bald or had light hair but that she "couldn't swear to that." A witness who happened to drive by the incident said that she was able to observe the man for "about two to three minutes" and described the gun he

was holding. The record shows that all three witnesses observed the man during daylight hours.

¶ 18    The witnesses agreed that the man was not wearing a shirt. The police officers who spoke with Halbrooks on the day of the incident asked him if he had been shirtless that afternoon. He responded that he was "possibly bare chested, as it was warmer earlier in the day." Halbrooks testified at trial that he was "bare chested" in his house that day but that he would not have walked outside without a shirt.

¶ 19    Two of the witnesses described Halbrooks's pants as blue jeans. The officers said he was wearing "blue pants." Although the victim told the 911 operator that the man "maybe [had] a tattoo," none of the three witnesses testified at trial that they specifically remembered seeing tattoos on the man.

¶ 20    At trial, the victim visually identified Halbrooks as the man who had followed her. After Halbrooks testified in his defense, the prosecution recalled the victim, who said that Halbrooks's voice matched the voice of the man who had followed her.

¶ 21    The neighbor testified that she does not "see all that well" and that she did not get a good enough look at the man to identify his

face. The driver, who had visually identified Halbrooks at the crime scene, identified him again at trial. But on cross-examination, she conceded that, during her first identification, it was getting dark, and he was already in handcuffs.

¶ 22     The three witnesses each described the man's gun differently. The victim told the 911 operator that Halbrooks had held "a weird gun . . . like a dart gun or an arrow gun." She said it was "long," but it was not "like a rifle." The neighbor testified that, although she knew "nothing about guns," the gun "looked like some kind of rifle." The driver described it as a "machine gun." No witness could identify any of three guns that the officers recovered from Halbrooks's house. Halbrooks testified that he used a .22 caliber rifle to scare the woman off his property.

¶ 23     We conclude that the evidence was sufficient in both quantity and quality to prove that Halbrooks was the man who followed the victim. The descriptions of the witnesses who saw the man on the day of the incident were largely consistent. The officers' testimony regarding Halbrooks's attire on the day of the incident matched the witnesses' descriptions of the man's clothing. Further, the jury was able to compare the witnesses' contemporaneous descriptions of the

man with Halbrooks's physical appearance at trial and photographs of him that the defense introduced into evidence.

¶ 24 The prosecution presented visual identifications of Halbrooks from the two witnesses who had the best view of him: the victim and the driver. And because the victim was visually impaired, the prosecution recalled her to testify that she recognized Halbrooks's voice as that of the man who had followed her. To the extent Halbrooks argues in his opening brief that some of the identifications were unduly suggestive, in his reply brief, he expressly abandoned the argument that any of the identifications were inadmissible.

¶ 25 Significantly, Halbrooks's contemporaneous statement to the officers closely matched the victim's report: that he followed a woman while holding a gun until she knocked on the front door of another house, at which time he returned home. It was the jury's role to consider the likelihood that two substantially similar incidents occurred on the same street on the same afternoon. *See People v. Poe*, 2012 COA 166, ¶ 14, 316 P.3d 13, 16 ("It is the fact finder's role to weigh the credibility of witnesses, to determine the

weight to give all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence.").

¶ 26      While Halbrooks supports his sufficiency argument by pointing to discrepancies between the witnesses' initial statements to the officers and the witnesses' trial testimony, we conclude that the differences went to the weight of the evidence. The court did not limit Halbrooks's cross-examination of the witnesses on the portions of their testimony where the witnesses expressed uncertainty or contradicted one another. "We may not 'substitute [our] judgment for that of the jury and reweigh the evidence or the credibility of witnesses.'" *Id.* (quoting *People v. Sharp,* 104 P.3d 252, 256 (Colo. App. 2004)).

¶ 27      Indeed, because Halbrooks does not contend that the court erred by admitting the witnesses' testimony, our role is limited to determining whether the evidence was substantial and sufficient to support a conclusion by a reasonable mind that Halbrooks was guilty of menacing. *See Donald,* ¶ 18, 461 P.3d at 7. We conclude that the evidence introduced at trial, described above, satisfies this standard. Thus, we reject Halbrooks's contention that the

prosecution presented insufficient evidence that he was the man who followed the victim.

### III. Conditions of Probation

¶ 28    According to a report from the National and Colorado Crime Information Center databases, Halbrooks had a prior conviction for statutory rape under section 261.5 of the California penal code (the California statutory rape statute).  Based on Halbrooks's California conviction, the trial court determined he was a "sex offender" for purposes of section 16-11.7-102(2)(a)(IV), C.R.S. 2024, and, therefore, imposed additional probation conditions for sex offenders (the additional conditions), including restrictions on his internet access.  Halbrooks contends that his prior California conviction was insufficient, without further analysis, to allow the court to impose the additional conditions.

¶ 29    After comparing the elements of the California statutory rape statute with the elements of unlawful sexual contact found in section 18-3-404(1.5), C.R.S. 2024 (the Colorado unlawful sexual contact statute), which the People argue are equivalent statutes, we conclude that Halbrooks could not be deemed a "sex offender" in Colorado because of the material differences between the statutes.

11

(Halbrooks alternatively contends that the court abused its discretion by imposing the additional conditions, but in light of our analysis of the Colorado sex offender probation statute, we need not reach that issue.)

### A. Standard of Review

¶ 30 To impose the additional conditions, the court was required to determine whether, in light of his prior conviction, Halbrooks was a "sex offender" for purposes of the Colorado sex offender probation statute. We review that question de novo. *See People v. Boling*, 261 P.3d 503, 505 (Colo. App. 2011).

¶ 31 Halbrooks did not specifically preserve his legal argument that he is not a sex offender based on the differences between the California statutory rape statute under which he was convicted and the crimes that trigger sex offender probation in Colorado. Thus, we review this argument for plain error. An error is plain if it is obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120. An error is obvious if it is "so clear-cut" that the court "should be able to avoid it without benefit of objection." *People v. Crabtree*, 2024 CO 40M, ¶ 42, 550 P.3d 656, 667 (quoting *Romero v. People*, 2017 CO 37, ¶ 6, 393 P.3d 973, 976).

"Consequently . . . [the] error must contravene a clear statutory command, a well-settled legal principle, or established Colorado case law." *Id.* An error is substantial if it "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.* at ¶ 43, 550 P.3d at 667 (quoting *Wilson v. People*, 743 P.2d 415, 420 (Colo. 1987)).

### B. The Law Governing Conditions of Probation

¶ 32    "Generally, a sentencing court has discretion in determining the appropriate conditions of probation." *People v. Silvanic*, 2023 COA 16, ¶ 24, 529 P.3d 1240, 1246. "But a sentencing court's imposition of probation conditions is not without limitation." *Id.* at ¶ 25, 529 P.3d at 1246. "[P]robation conditions [must] be reasonably related to a defendant's rehabilitation and the purposes of probation," which include "enhancing the reintegration of the offender into a responsible lifestyle and affording society a measure of protection against recidivism." *Id.* at ¶ 27, 529 P.3d at 1246 (quoting *People v. Brockelman*, 933 P.2d 1315, 1318-19 (Colo. 1997)).

¶ 33    The General Assembly has specified when a defendant is an appropriate candidate for additional conditions of probation for

13

adult sex offenders based on a prior out-of-state conviction.  *See* § 16-11.7-102(2)(a)(IV).  As relevant here, a "sex offender" is any person who (1) was "evaluated because of a discretionary request" by a court; (2) a court "determines should undergo sex offender treatment based upon the recommendations of the evaluation"; (3) is "convicted in the state of Colorado on or after January 1, 1994, of any criminal offense"; and (4) "has previously been convicted in any other jurisdiction of any offense that would constitute a sex offense" as defined in the statute.  *Id.*  The statute provides for heightened evaluation, treatment, and monitoring of "sex offenders."  §§ 16-11.7-104 to -105, C.R.S. 2024.

## C.  Additional Background

¶ 34    Halbrooks's criminal history showed that he was convicted of a sexual offense in California more than twenty-six years before his trial in this case.  The history showed he was originally charged under the California statute criminalizing "oral copulation with a person under sixteen."  Cal. Penal Code § 288a(b)(2) (West 1997) (current version at Cal. Penal Code § 287(b)(2)).  But the history also showed that the charge was later dismissed and that Halbrooks was convicted of an added count under the California

14

statutory rape statute, Cal. Penal Code § 261.5(a) (West 1997). The prosecutor told the court that he had requested documentation of Halbrooks's conviction from California officials, but they had responded, "the records don't exist."

¶ 35     At the conclusion of trial, the court found that Halbrooks had a prior "sex offense" conviction on his record and ordered a sex offense specific evaluation (SOSE). Defense counsel did not object to the SOSE.

¶ 36     The SOSE said the following about Halbrooks's prior conviction:

> Halbrooks acknowledged that he had a case from 1996 in California, but claimed he does not remember much. He explained he has had multiple traumatic brain injuries (TBI) and struggles with memory. He believes the case was sexual in nature, but he believes the charges were dropped because of a lack of evidence. He stated, "When I was 21 this 17 year old girl was dating a friend of mine and we were all hanging out. Nothing ever happened, but the DA tried to put some charges on me."

The drafter of the SOSE recommended that Halbrooks participate in sex offense specific therapy based on "the existence of [his] sexual offense and the unknown factors surrounding this offense as a

15

result of [his] denial and/or memory problems and lack of collateral information." The subsequent presentence investigation (PSI) report recommended that the court order Halbrooks to comply with the additional conditions, including conditions restricting his internet usage.

¶ 37 The court sentenced Halbrooks to thirty months of supervised probation with the "standard conditions of supervision." Based on Halbrooks's prior conviction, the court also imposed the additional conditions, as recommended in the PSI report. The court reasoned that "the recommendations in the [PSI report] suggest that [Halbrooks is] a moderate risk to recidivate" and that "there is a need for treatment." The additional conditions included, for example, that Halbrooks would not — without first seeking approval from his probation officer — have contact with children, go to locations where children are usually present, enter a new sexual or romantic relationship, or change residences. Further, the court imposed "Special Additional Condition 23," which substantially limited Halbrooks's ability to use the internet:

> I will not subscribe to or use any Internet
> service provider, by modem, LAN, DSL, or any
> other avenue (to include but not be limited to

satellite dishes, PDAs, electronic games, web televisions, Internet appliances and cellular/digital telephones) and will not use another person's Internet or use the Internet through any avenue until approved in advance by the probation officer in consultation with the community supervision team. This includes but is not limited to the following activities: web browsing/surfing; email; Internet-related interpersonal communication (e.g. chatting, texting, instant messaging, participating in interactive games); producing web content; Internet-related telephone communication (e.g. Skype, Voice Over Internet Protocol); and file sharing through any means.

### D. Halbrooks Is Not a Sex Offender Under Colorado Law

¶ 38 The court has discretion to order a SOSE for a person who "may be determined to be a sex offender based upon a prior offense." § 16-11-102(1)(b)(I), C.R.S. 2024. For purposes of this case, the General Assembly defined a "sex offender" as any person who

> (A) Was evaluated because of a discretionary request by a prosecuting attorney or court pursuant to section 16-11-102; and
>
> (B) A court determines should undergo sex offender treatment based upon the recommendations of the evaluation and identification pursuant to section 16-11.7-104; and

17

(C) Is convicted in the state of Colorado on or after January 1, 1994, of any criminal offense and, if the person has previously been convicted of a sex offense as defined in subsection (3) of this section, in the state of Colorado; or if the person has previously been convicted in any other jurisdiction of any offense that would constitute a sex offense as defined in subsection (3) of this section; or if the person has a history of any sex offenses as defined in subsection (3) of this section.

§ 16-11.7-102(2)(a)(IV). As relevant here, section 16-11.7-102(3) states that unlawful sexual contact is a "sex offense."

¶ 39    This case turns on whether the second part of section 16-11.7-102(2)(a)(IV)(C) was satisfied: whether Halbrooks "ha[d] previously been convicted in any other jurisdiction of any offense that would constitute a sex offense as defined" in section 16-11.7-102(3). Specifically, we consider whether a conviction under the California statutory rape statute "would constitute [the] sex offense" of unlawful sexual contact under section 16-11.7-102(3).

¶ 40    Halbrooks initially argues that the prosecution did not provide the court with sufficient documentation to establish the specific offense of which he was convicted in California. Because we conclude that a conviction under the California statutory rape statute is not necessarily the equivalent of a conviction under the

18

Colorado unlawful sexual contact statute, we need not opine on this issue. Thus, we assume, without deciding, that the documentation of Halbrooks's prior criminal history was sufficient and turn to the analysis of the key statutes.

¶ 41     Section 18-3-404(1.5) provides that

> [a]ny person who knowingly, with or without sexual contact, induces or coerces a child by any of the means set forth in section 18-3-402[, C.R.S. 2024,] to expose intimate parts or to engage in any sexual contact, intrusion, or penetration with another person, for the purpose of the actor's own sexual gratification, commits unlawful sexual contact.

For purposes of the Colorado unlawful sexual contact statute, a "child" is any person under eighteen years old. *Id.*

¶ 42     In contrast, the California statutory rape statute criminalizes "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor." Cal. Penal Code § 261.5(a) (West 1997). For purposes of the California statutory rape statute, a "minor" is a person under eighteen years old. *Id.*

¶ 43     The relevant elements of each offense are:

19

| The California Statutory Rape Statute | The Colorado Unlawful Sexual Contact Statute |
|---|---|
| Unlawful sexual intercourse:<br>• An act of sexual intercourse<br>• Accomplished with a person<br>• Who is not the spouse of the perpetrator<br>• And who is a minor | Unlawful sexual contact:<br>• Knowingly<br>• With or without sexual contact<br>• Inducing or coercing a child<br>• By means set forth in section 18-3-402<br>• To expose intimate parts or to engage in any sexual contact, intrusion, or penetration with another person<br>• For the purpose of the actor's own sexual gratification |

¶ 44    Because the statutes are materially different, as explained further below, we conclude that Halbrooks's conviction for violating the California statutory rape statute was not equivalent to a conviction for violating the Colorado unlawful sexual contact statute.

¶ 45    Section 18-3-402 — Colorado's sexual assault statute — provides that a sexual assault occurs if "[a]ny actor . . . knowingly inflicts sexual intrusion or sexual penetration on a victim," and

(a)    the actor causes "sexual intrusion or sexual penetration knowing the victim does not consent";

20

(b)    the actor "knows that the victim is incapable of appraising the nature of the victim's conduct";

(c)    the actor "knows that the victim submits erroneously, believing the actor to be the victim's spouse";

(d)    "the victim is less than fifteen years of age and the actor is at least four years older than the victim and is not the spouse of the victim";

(e)    "the victim is at least fifteen years of age but less than seventeen years of age and the actor is at least ten years older than the victim and is not the spouse of the victim";

(f)    the victim "is in custody of law or detained in a hospital or other institution" and the actor uses a "position of authority to coerce the victim to submit";

(g)    "while purporting to offer a medical service," the actor "engages in treatment or examination of a victim for other than a bona fide medical purpose or in a manner substantially inconsistent with reasonable medical practices"; or

(h)    the actor knows that "the victim is physically helpless and the victim has not consented."

§ 18-3-402(1). All eight of these ways of committing sexual assault are "means" for purposes of the Colorado unlawful sexual contact statute. *See People v. Mena*, 2025 COA 14, ¶ 43, ___ P.3d ___, ___. Thus, in addition to its burden to prove the elements of knowledge and inducement or coercion, to obtain a conviction under the Colorado unlawful sexual contact statute, the prosecution must also prove that the defendant employed one of the eight means. Further, the prosecution must establish that the actor acted for the specific purpose of his own sexual gratification. § 18-3-404(1.5).

¶ 46    In contrast, to obtain a conviction under the California statutory rape statute, the prosecution need not prove one of the eight means found in section 18-3-402(1), that the defendant acted knowingly, that the child's sexual contact was induced or coerced, or the defendant acted for the specific purpose of his own sexual gratification. *See* Cal. Penal Code § 261.5(a) (West 1997). Rather, an adult could be convicted under the California statutory rape statute merely by engaging in sexual intercourse with a person, not the adult's spouse, under the age of eighteen. *See id.*

¶ 47    Thus, the two offenses are not sufficiently comparable such that conduct resulting in a conviction under the California statutory

rape statute would automatically result in a conviction under the Colorado unlawful sexual contact statute if the conduct occurred in this state. Unlawful sexual intercourse under the California statutory rape statute does not necessarily "constitute a sex offense" as defined in section 16-11.7-102(3). Under some circumstances, proof of a defendant's conduct that would be sufficient for a conviction under the California statutory rape statute may also be sufficient to establish the elements of unlawful sexual contact in Colorado. However, based on the limited evidence in the record regarding Halbrooks's twenty-six-year-old conviction, that is not the case here. Thus, the evidence did not establish that Halbrooks had a prior conviction for a "sex offense" under section 16-11.7-102(2)(a)(IV)(C). For the same reasons, the court erred by concluding that Halbrooks was a "sex offender" for purposes of section 16-11.7-102(2)(a)(IV) and therefore by ordering him to comply with the additional conditions.

### E. The Error Was Obvious and Substantial

¶ 48 Having concluded that the court erred, we now consider whether the error was plain. We conclude that it was.

¶ 49    First, the error was obvious.  The court's erroneous classification of Halbrooks as a sex offender resulted from its misapplication of a clear statutory command — section 16-11.7-102(2)(a)(IV) — which provides that a prior conviction can serve as the basis for sex offender status only if it "would constitute a sex offense as defined in subsection (3) of this section."  If the court had compared the California and Colorado statutes, as we do above, the court would have realized that the two statutes require different elements of proof.

¶ 50    Second, the court's error was substantial.  While the error did not necessarily cast doubt on the reliability of the judgment of conviction, it "affected 'the substantial rights of the accused.'"  *Crabtree*, ¶ 43, 550 P.3d at 667 (quoting *People v. Stewart*, 55 P.3d 107, 120 (Colo. 2002)).  Those rights included Halbrooks's ability to engage in conduct as basic as visiting a public park, entering into a new romantic relationship, or moving residences without first seeking approval from his probation officer.  Most importantly, the court's erroneous classification of Halbrooks as a sex offender curtailed his ability to use the internet, a significant part of everyday life.

¶ 51    For these reasons, the court's classification of Halbrooks as a sex offender and its imposition of the additional conditions cannot stand.  Because Halbrooks did not appeal the court's imposition of the standard conditions of supervision, we express no opinion on that portion of Halbrooks's sentence.

## IV.   Restitution

¶ 52    Halbrooks contends that the court erred by ordering restitution because the prosecution presented insufficient evidence to prove a causal link between his criminal conduct and the victim's mental health condition for which she received treatment.  We disagree.

### A.    Additional Background

¶ 53    At Halbrooks's sentencing hearing, the prosecutor requested restitution in the amount of $2,600, which the county crime victim compensation board (CVCB) had already paid on the victim's behalf, but said he needed additional time to determine whether to include other expenses in the restitution request.  The court granted the prosecution's request and set a hearing on restitution.

¶ 54    Before the restitution hearing, the prosecution filed a victim impact statement, in which the victim detailed how Halbrooks's

25

actions affected her mental health, as well as the financial support she received from the CVCB to cover the cost of mental health counseling.

¶ 55      At the restitution hearing, the prosecution presented a written summary reflecting the dates and expenses of the victim's counseling sessions for which the CVCB had paid. The prosecution also presented testimony from a CVCB administrator, who connected the financial assistance provided on behalf of the victim with the harm resulting from Halbrooks's actions. The administrator explained that, because the financial assistance was for "mental health" expenses, the summary was the only document she was "permitted to generate and file with the Court by [CVCB] policy." Halbrooks did not call any witnesses. The court ordered Halbrooks to pay restitution to the CVCB in the amount of $2,600.

## B.      Applicable Law and Standard of Review

¶ 56      The restitution statute provides, "Every order of conviction . . . shall include consideration of restitution." § 18-1.3-603(1), C.R.S. 2024. We generally review a restitution award for an abuse of discretion. *People v. Fregosi*, 2024 COA 6, ¶ 39, 547 P.3d 402, 410. But when, as here, a party challenges the sufficiency of the

26

evidence supporting a restitution award, we review de novo whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, supports the restitution award. *People v. Stone*, 2020 COA 24, ¶ 7, 471 P.3d 1159, 1162-63; *People v. Barbre*, 2018 COA 123, ¶ 25, 429 P.3d 95, 99.

¶ 57 "After a [CVCB] makes a payment to a victim, it might ask a court to order the defendant in the victim's case to pay restitution" to the CVCB. *People v. Henry*, 2018 COA 48M, ¶ 1, 439 P.3d 33, 34. A CVCB may establish the payments it made on behalf of a victim through (1) "a list of the amount of money paid to each provider" or (2) "summary data reflecting what total payments were made," if "the identity or location of a provider would pose a threat to the safety or welfare of the victim." § 18-1.3-603(10)(b). A CVCB may provide summary data to document the amount it paid for the victim's mental health counseling, among other expenses. § 18-1.3-603(10)(b)(II).

¶ 58 The prosecution has the burden of proving, by a preponderance of the evidence, that the defendant's criminal conduct proximately caused the victim's loss. *Fregosi*, ¶ 44, 547

P.3d at 410. "Proximate cause in the context of restitution is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *People v. Rice*, 2020 COA 143, ¶ 24, 478 P.3d 1276, 1282, *overruled on other grounds by People v. Weeks*, 2021 CO 75, ¶ 39, 498 P.3d 142, 154-55.

¶ 59 The General Assembly established a rebuttable presumption that the prosecution meets its burden to prove proximate cause when a CVCB pays a provider on a victim's behalf. "If, as a result of the defendant's conduct, a [CVCB] has provided assistance to or on behalf of a victim . . . , the amount of assistance provided and requested by the [CVCB] is presumed to be a direct result of the defendant's criminal conduct." § 18-1.3-603(10)(a).

¶ 60 After a CVCB establishes the amount it paid on behalf of a victim, the burden shifts to the defendant to demonstrate that the payment was not for services directly resulting from his criminal conduct. *See Stone*, ¶ 24, 471 P.3d at 1164. The two-step process for making such a showing is set forth in section 24-4.1-107.5(3), C.R.S. 2024. *See Fregosi*, ¶¶ 53-55, 547 P.3d at 411. First, the defendant may request "an in camera review" of the CVCB's

28

records, so long as the request "is not speculative and is based on an evidentiary hypothesis that warrants" such review. § 24-4.1-107.5(3). Second, following the in camera review, the court may provide the defendant with information from the records that it finds is "necessary for the defendant to dispute the amount claimed for restitution" and would not "pose any threat to the safety or welfare of the victim" or "violate any other privilege or confidentiality right." *Id.*

### C. Halbrooks Did Not Overcome the Statutory Rebuttable Presumption

¶ 61 We reject Halbrooks's sufficiency challenge for three reasons. First, the record supports the court's determination that the CVCB was only required to provide summary data to support the prosecution's restitution request. Second, the record demonstrates that the prosecution relied on additional evidence at the restitution hearing, besides the summary data, to establish that Halbrooks proximately caused the victim's injuries for which she sought the mental health counseling and for which the CVCB paid. Third, Halbrooks offered no evidence to rebut the statutory presumption of causation.

¶ 62     First, the record supports the court's determination that disclosing the identity or location of the victim's mental health provider posed a risk to the victim.  In the victim impact statement, the victim raised concerns about her mental health and recovery and said she no longer feels safe in her home or community.  She also expressed concern that Halbrooks knew where she lived from a restraining order entered against him.

¶ 63     In addition, as the CVCB noted in its summary of the victim's mental health counseling expenses that it had paid, the Colorado Supreme Court has recognized that the relationship between a mental health provider and a patient must be confidential and that the mere threat of disclosure destroys the sanctity of the provider-patient relationship.  *See People v. Sisneros*, 55 P.3d 797, 802 (Colo. 2002).  Given the concerns for the victim's safety, welfare, and treatment efficacy, the prosecution's summary complied with section 18-1.3-603(10)(b)(II), which limits disclosure of a victim's mental health counseling expenses to "summary data reflecting what total payments were made."

¶ 64     Second, the record demonstrates that the prosecution relied on more than the summary data to support its restitution request.

Halbrooks does not address the additional evidence that the prosecution presented to support its restitution request — the testimony from the CVCB administrator. *See Fregosi*, ¶ 47, 547 P.3d at 411. During the hearing, the administrator testified that, before the CVCB can authorize a payment for mental health services, the provider must submit a treatment plan that includes a sworn declaration that the treatment is "related to the crime" and that "all treatment that [the provider] render[s] and bill[s] to the [CVCB] will be related to the crime." If, after reviewing the treatment plan, the CVCB determines that it is directly related to the crime, the CVCB can authorize a specified "number of sessions" or a "dollar amount worth of therapy treatments." The administrator testified that the CVCB followed this procedure in Halbrooks's case.

¶ 65 Lastly, Halbrooks offered no evidence to rebut the statutory presumption of causation. The prosecution satisfied its burden of production by establishing that the CVCB paid $2,600 for the victim's mental health counseling expenses. The burden then shifted to Halbrooks to negate the causal link between his criminal action and the mental health counseling expenses that the CVCB

31

had paid. *See Stone*, ¶ 24, 471 P.3d at 1164. Rather than presenting evidence through the two-step process outlined in section 24-4.1-107.5(3), Halbrooks merely alleged that the CVCB's summary was insufficient to support the prosecution's restitution request.

¶ 66 For these reasons, the court did not err by ordering Halbrooks to pay $2,600 in restitution.

## V. Disposition

¶ 67 We affirm Halbrooks's judgment of conviction, reverse the imposition of the additional terms and conditions of probation for adult sex offenders, and affirm the restitution order. We remand for correction of the mittimus to remove the references to "Non-SOISP with all standard terms and cond[.] of non-SOISP" and "addit[i]onal cond[.] #23, 26, and 27 and follow through with any treatment."

JUDGE JOHNSON and JUDGE MOULTRIE concur.