22CA0207 Peo v Krutitskiy 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA0207
El Paso County District Court No. 20CR3647
Honorable David Prince, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Nikolay Anatolevic Krutitskiy,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lum and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

---

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Meghan M. Morris, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 Defendant, Nikolay Anatolevic Krutitskiy, appeals the judgment of conviction entered on a jury verdict finding him guilty of various offenses arising out of the shooting and killing of his youngest son. We affirm.

## I. Background

¶ 2 Krutitskiy was at home, intoxicated, showing his three children one of his guns. The two surviving children, twelve and ten years old respectively, stated in separate forensic interviews that Krutitskiy pointed the gun first at the oldest child, second at the middle child, and third at the youngest child. The twelve-year-old said that when he pointed the gun at each child, he asked that child, "[G]ood or no"? or "[S]afe or no"? The ten-year-old said that he asked each child whether the child wanted Krutitskiy to kill them.

¶ 3 When Krutitskiy pointed the gun at his youngest child, the gun fired and shot the child in the neck. Both surviving children told forensic interviewers that nobody was in trouble leading up to the shooting and that the shooting was an accident.

¶ 4 As soon as the gun fired, Krutitskiy and his wife (who was in another room) rushed to the youngest child to try to help him.

1

According to the ten-year-old, Krutitskiy immediately said he was sorry and that he did not mean to pull the trigger. The whole family got in their car and rushed the youngest child to emergency medical care (they lived in a rural area). The child later died in the hospital from his gunshot wound.

¶ 5    Krutitskiy was charged with first degree murder and child abuse resulting in death for killing his youngest child. He was also charged with two counts each of felony menacing and child abuse for pointing the gun at the two surviving children.

¶ 6    At trial, the court admitted evidence that Krutitskiy kept various firearms and weapons that were not involved in the shooting in an unlocked plastic storage bin at the house.

¶ 7    The jury found Krutitskiy guilty of the charged offenses described above. He was convicted and sentenced to life in prison. The trial court also ordered Krutitskiy to pay restitution to the Crime Victim Compensation Board (CVCB).

¶ 8    Krutitskiy appeals. He argues the trial court erred by (1) admitting evidence of Krutitskiy's other firearms and weapons; (2) improperly instructing the jury on the presumption of innocence; (3) allowing the prosecutor to engage in misconduct during closing

argument; and (4) ordering restitution based on insufficient evidence.  We conclude that none of these arguments warrant relief.

## II.    Admission of Other Weapons

¶ 9      Krutitskiy argues that the evidence of his other weapons was irrelevant and therefore inadmissible.  He argues that the erroneous admission of this evidence requires reversal of his murder and child abuse resulting in death convictions.  We disagree.

### A.    Governing Law

¶ 10    We review evidentiary rulings for an abuse of discretion. *People v. Elmarr*, 2015 CO 53, ¶ 20.  If a court abuses its discretion by admitting irrelevant evidence, we must reverse unless the error was harmless, meaning it did not substantially influence the verdict or affect the fairness of the trial.  *Hagos v. People*, 2012 CO 63, ¶ 12.  Erroneously admitted evidence is harmless if the properly admitted evidence overwhelmingly establishes the defendant's guilt. *Pernell v. People*, 2018 CO 13, ¶ 25.  On appeal, it is the prosecution's burden to show that an error was harmless, and if the prosecution fails to carry that burden we must reverse.  *See James v. People*, 2018 CO 72, ¶ 19.

¶ 11 In general, evidence is relevant and therefore admissible if it has any tendency to make the existence of any fact of consequence to the determination of the action more or less probable. CRE 401, 402.

### B. Any Error in Admitting the Evidence Was Harmless

¶ 12 As charged here, first degree murder required the prosecution to prove that Krutitskiy knowingly caused the death of his son. *See* § 18-3-102(1)(f), C.R.S. 2024. The main issue at trial was whether Krutitskiy shot his son knowingly. The trial court admitted the evidence of Krutitskiy's other weapons because, in its view, that evidence was relevant to this main issue. The court ruled that possessing the other weapons suggested that Krutitskiy knew how to use weapons, which made it more likely that Krutitskiy knowingly killed his son.

¶ 13 Krutitskiy argues that our supreme court rejected this relevance reasoning in *Kaufman v. People*, 202 P.3d 542, 547 (Colo. 2009). Kaufman fatally stabbed the victim with a knife during an altercation on the street. The prosecution successfully introduced evidence that Kaufman possessed eight knives and other weapons at his home. *Id.* at 554. On appeal, the prosecution argued that

admitting this evidence was proper because it was relevant to show Kaufman's intent: "Kaufman's experience with knives tended to show that he knew what the result would be" when he stabbed someone in the manner that he stabbed the victim. *Id.* The supreme court rejected this argument, explaining that a person's weapons collection does not make it more probable that the person is experienced in the use of those weapons. *Id.* at 555. As the supreme court put it, "[a] weapons collection alone has nothing to do with being able to handle knives. As an analogy, the fact that a person displays many books on a bookshelf does not necessarily mean that the person has ever read the books." *Id.*

¶ 14 Krutitskiy may have a point. But ultimately, we need not decide whether it was an abuse of discretion to admit the evidence of the other weapons here. Even if we assume that it was, we conclude that any error was harmless.

¶ 15 As noted above, we must reverse unless the prosecution carries its burden to establish that the error was harmless. *See James*, ¶ 19. The substance of the prosecution's harmlessness argument spans a mere two sentences:

> This was not a close case; rather, the evidence of Krutitskiy's guilt was overwhelming. Most significantly, both his daughter and older son testified as to the events that they witnessed, describing their father pointing a gun at each of child [sic], asking them if they wanted to die, and then shooting [his son].

¶ 16    From this general statement, it is clear that the prosecution argues the error was harmless because there was overwhelming evidence the Krutitskiy was guilty of both first degree murder and child abuse resulting in death. But as will become evident below, the overwhelming evidence analysis is different for each offense because the elements of each offense are different. Though the prosecution did not articulate separate overwhelming evidence arguments for each offense, we nevertheless conclude that the prosecution did just enough to carry its burden.

¶ 17    The first degree murder count required that Krutitskiy knowingly caused his son's death — that he was aware that his conduct was practically certain to kill his son. *See* § 18-3-102(1)(f) (elements of first degree murder); § 18-1-501(6), C.R.S. 2024 (defining "knowingly"). This offense did not require specific intent. *See* § 18-1-501(6) (offenses that require knowing conduct are general intent offenses). In other words, the offense did not require

6

that Krutitskiy specifically intended to cause his son's death. All it required was Krutitskiy's awareness that his conduct was practically certain to kill his son. Thus, it was possible that Krutitskiy was aware that his conduct was practically certain to kill his son yet causing his son's death was nevertheless unintentional. We conclude that the evidence overwhelmingly established exactly this.

¶ 18 The evidence was clear that Krutitskiy pointed a revolver, loaded, cocked, and with a very light trigger, at his son. Krutitskiy was intoxicated, suggesting his fine motor skills were diminished. Krutitskiy may not have intended for the gun to fire. But pointing that gun, loaded and cocked, at his son while intoxicated was practically certain to cause his son's death. And the evidence overwhelmingly established that Krutitskiy was aware that this result was practically certain. He knew he was drunk and knew he was pointing a cocked gun with a light trigger at his son. And according to Krutitskiy's statement to law enforcement, he was unloading ammunition from the gun when it fired. In other words, he knew there were live rounds in the gun. The evidence was therefore overwhelming that he knowingly caused his son's death.

¶ 19    We recognize that there was also strong evidence that Krutitskiy did not mean to kill his son — that the killing was unintentional. Both surviving children testified that it was an accident, and Krutitskiy was distraught in the shooting's aftermath. But, as explained above, this evidence does not conflict with the evidence that Krutitskiy knowingly caused his son's death. We therefore must conclude that the evidence was overwhelming that Krutitskiy was aware that his conduct was so dangerous that it was practically certain to cause his son's death even though he did not intend for his son to die. In other words, the evidence was overwhelming that Krutitskiy was guilty of first degree murder under section 18-3-102(1)(f), and any error in admitting evidence of the other weapons was harmless.

¶ 20    We reach the same conclusion about the child abuse resulting in death conviction — and because this offense's required mental state is different, the analysis is not nearly so nuanced. Child abuse resulting in death did not require the prosecution to prove that Krutitskiy knowingly caused his son's death. Instead, the prosecution had to prove only that he recklessly permitted his son to be placed in a situation that posed a threat of injury and that his

son died as a result.  *See* § 18-6-401(1)(a), (7)(a)(I), C.R.S. 2024.  A person acts recklessly by consciously disregarding a substantial and unjustifiable risk that a result will occur.  § 18-1-501(8).

¶ 21     At the very least, the evidence overwhelmingly established that Krutitskiy recklessly placed his son in a situation that posed a threat of injury to his son (while drunk, Krutitskiy pointed a cocked and loaded gun with a light trigger at his son).  And there is no question that this resulted in his son's death.  We therefore conclude any error was also harmless to the child abuse resulting in death conviction.

### III.    Presumption of Innocence Instruction

¶ 22     Krutitskiy argues that a comment by the trial court during voir dire resulted in the jury being incorrectly instructed on the presumption of innocence.

¶ 23     Trial courts have an affirmative duty to correctly instruct the jury on the applicable law.  *People v. Jones*, 2018 COA 112, ¶ 24.  To determine whether the trial court fulfilled this duty, we review all the instructions together, as a whole, de novo.  *Id.*  Because Krutitskiy failed to object to the court's statement he now challenges on appeal, we review for plain error.  *See Hagos*, ¶ 14.

9

This means that even if the court incorrectly instructed the jury, we reverse only if the error was obvious and substantial. *Id.* We perceive no error in the first place.

¶ 24 Due process requires that a defendant is presumed innocent until proved guilty. *Garcia v. People*, 2022 CO 6, ¶ 15. This presumption remains in place throughout the trial, "terminating only if the jury concludes that the prosecution has proved beyond a reasonable doubt that the defendant is guilty." *People v. Estes*, 2012 COA 41, ¶ 32.

¶ 25 Krutitskiy argues that the trial court incorrectly told the jury that the presumption terminates *before* the jury determines whether a defendant is guilty. Considering the court's challenged statement in context with the rest of its statements about the presumption of innocence, we conclude the court properly instructed the jury.

¶ 26 During voir dire, the court explained the presumption of innocence at length. The single comment Krutitskiy now challenges came in the last paragraph of this explanation:

> I'm going to talk about the presumption of
> innocence. Most of these principles you're
> going to be familiar with because they're talked

about quite a bit in popular society. Everyone [sic] person charge[d] with a crime is presumed innocent. This presumption of innocence remains with the Defendant through the trial and should be given effect by the juror unless, after considering all of the evidence, the juror is then convinced that the Defendant is guilty beyond a reasonable doubt.

Presumption of innocence is a cornerstone of the criminal justice system in the United States. Actually different than many systems around the world. All that means in a simple way is if you were magically a juror right now and you had to enter a decision right now on whether to find the person guilty or not, you have heard no evidence because no trial has started. And so by definition under the presumption of innocence you would have to find not guilty because you have heard not one shred of evidence. And so the person is presumed innocent until proven guilty.

Anybody have any objection to applying that principle in this case?

Closely related to the presumption of innocence is the burden of proof. Again, a concept you hear talked about in popular society all the time. The burden of proof is upon the Prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged. The Prosecution must prove its case. The Defendant need not present any evidence and is not required to prove anything in the case. The Defendant is not required to testify. And if

11

> he does not testify, that fact cannot be held against him in any regard by the jury.
>
> Again, it's a version of that presumption of innocence. *Until the Prosecutor actually presents the evidence that proves guilt beyond a reasonable doubt, the person by law is presumed to be innocent.* Part of that burden of proof is that the Defense doesn't actually have to present any evidence, or prove anything, or disprove anything.

(Emphasis added.)

¶ 27 According to Krutitskiy, the italicized statement was incorrect because it told the jury that the presumption terminated as soon as the prosecution *presents* sufficient evidence of guilt, not when the jury *concludes* that the prosecution has presented sufficient evidence of guilt. But the court made this statement in the context of explaining why the defendant is not required to testify and why the defense has no burden to prove anything. The court was not commenting on the duration of the presumption of innocence, but rather that the prosecution bears the burden of proof. Moreover, the court had just explicitly and properly explained the presumption's duration (stating that it "remains with the Defendant through the trial and should be given effect by the juror unless,

12

after considering all of the evidence, the juror is then convinced that the Defendant is guilty beyond a reasonable doubt").

¶ 28　　We therefore conclude that the instructions as a whole did not mislead the jury about the presumption of innocence's duration.

## IV.　Prosecutorial Misconduct

¶ 29　　Krutitskiy next contends that the prosecutor engaged in misconduct during rebuttal closing argument.

¶ 30　　Reviewing a claim of prosecutorial misconduct involves a two-step analysis. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Id.* Second, if the conduct was improper, we determine whether reversal is required under the applicable standard of review. *Id.* We perceive no impropriety under step one.

¶ 31　　Prosecutors are afforded wide latitude in choosing their preferred language and style, "as well as in replying to an argument by opposing counsel." *People v. McMinn*, 2013 COA 94, ¶ 60. Because arguments at trial are seldom perfectly scripted, we give prosecutors the benefit of the doubt when their remarks are ambiguous or inartful. *Id.*

¶ 32    Krutitskiy argues that during rebuttal closing argument the prosecutor improperly implied that defense counsel did not believe in the defense and was attempting to trick the jury. We conclude that the following argument from the prosecutor was within the bounds of the wide latitude we must afford him:

> Folks, this is not a case of confirmation bias. This is a case of truth. And the Defense is afraid of the truth, so they are inventing this narrative of confirmation bias. They are inventing reasonable doubt where none exists.
>
> Think carefully about what they said during their closing argument. Maybe it was somebody else. Maybe it wasn't this gun. Maybe that other gun was something else. Those maybes are all speculative doubts. It's not evidence. It doesn't show anything. It's designed specifically to confuse you from the truth in this case. Again, a truth they're afraid of because it shows beyond a reasonable doubt that the Defendant acted knowingly throughout the course of his actions on June 23rd of 2020.
>
> Let's think all the way back to jury selection. Okay? Think about — about the questions Defense asked you during their jury selection. Could you believe this was an accident. Well, they realized pretty quick that wasn't going to work. So then what they told in their opening statement is it was a tragic accident. It wasn't him. He didn't do it. So now we're walking way [sic] from he accidentally shot him. Now

14

we're going to say he's not even the one who shot him.

¶ 33     These remarks did not denigrate defense counsel as Krutitskiy contends. Instead, they responded to the defense theory of the case by attempting to explain why that theory was implausible. The comments may have been inartful and somewhat harsh, but they were within the wide latitude we afford prosecutors during closing argument.

## V.     Cumulative Error

¶ 34     Because we have identified only a single error, we necessarily reject Krutitskiy's argument that the combined effect of multiple errors warrants relief from his convictions.

## VI.     Restitution

¶ 35     Finally, Krutitskiy argues that the evidence was insufficient to support the court's award of restitution to the CVCB. Specifically, he argues that the prosecution failed to meet the statutory requirements to receive the causation presumption available under section 18-1.3-603(10)(a), C.R.S. 2024, and the evidence of causation was therefore insufficient. We review the record de novo

to determine whether the evidence was sufficient to support a restitution award. *People v. Fregosi*, 2024 COA 6, ¶ 40.

¶ 36 To secure a restitution award, the prosecution must establish by a preponderance of the evidence that the defendant's criminal conduct caused the pecuniary loss for which restitution is awarded. *Id.* When, as here, a CVCB provides assistance to or on behalf of a victim, the CVCB qualifies as a victim for purposes of restitution. § 18-1.3-602(4)(a)(IV), C.R.S. 2024. And section 18-1.3-603(10)(a) provides that when a CVCB pays a victim compensation claim, a rebuttable presumption arises that the defendant's criminal conduct caused a loss in the amount paid out by the CVCB. *Fregosi*, ¶¶ 43-44. To establish the amount of the loss, section 18-1.3-603(10)(b) requires that the prosecution either (1) list the amount of money paid to each provider or (2) provide a summary of payments made for categories of expenses if the identity or location of a provider would threaten the victim's safety or welfare.

¶ 37 Here, a CVCB paid victim compensation claims for funeral/burial expenses and therapy for Krutitskiy's wife and two surviving children. The prosecution provided only a summary of payments made for different categories of expenses. But the court

16

made no finding, and we are unaware of any evidence tending to show, that providing Krutitskiy the identity or location of any provider would threaten the safety or welfare of any victim. In other words, the prosecution did not establish the amount of assistance provided in compliance with subsection (10)(b). According to Krutitskiy, this noncompliance with subsection (10)(b) meant that the prosecution was not entitled to the causation presumption in subsection (10)(a). *See* § 18-1.3-603(10)(a)-(b). Without the benefit of the causation presumption, Krutitskiy argues that the evidence was insufficient to establish causation and, therefore, restitution.

¶ 38    We disagree because we conclude that the evidence was sufficient to support the restitution award independently of subsection (10) and the causation presumption. The prosecution did not rely only on subsection (10)(a)'s causation presumption to establish causation. Instead, the CVCB administrator testified to the general policies the CVCB follows when evaluating whether to pay a victim compensation claim. She explained that before paying a claim, the CVCB is required "to get documentation that those bills are directly related to the criminal incident." She testified that all the policies were adhered to in this case. This was sufficient to

establish causation — it was sufficient evidence that it was more likely than not that Krutitskiy's criminal conduct proximately caused the losses covered by the CVCB payments. Moreover, the administrator verified the specific amounts that the CVCB paid for funeral/burial expenses and therapy for Krutitskiy's wife and surviving children.

¶ 39 Thus, even if we assume without deciding that Krutitskiy is correct and the prosecution was not entitled to the subsection (10)(a) causation presumption, the evidence was nevertheless sufficient to support the restitution award.

## VII. Disposition

¶ 40 The judgment of conviction is affirmed.

JUDGE LUM and JUSTICE MARTINEZ concur.