24CA0529 Peo v Rafaela-Ramirez 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0529
Adams County District Court No. 21CR3805
Honorable Jeffrey Smith, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Dante Alberto Rafaela-Ramirez,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Dante Alberto Rafaela-Ramirez, appeals the district court's restitution order totaling $13,843.82.  We affirm.

## I.    Background

¶ 2    In July 2020, Rafaela-Ramirez forcibly dragged his longtime partner, M.C., into their home, where he proceeded to physically assault her and force her to engage in unwanted sexual contact.  A jury later convicted him of second degree kidnapping, unlawful sexual contact, and third degree assault.  The court sentenced Rafaela-Ramirez to seven years to life in prison.

¶ 3    At the restitution hearing, the prosecution requested $13,843.82 for amounts paid out by the Crime Victim Compensation Board (CVCB) on behalf of M.C. for medical and mental health treatment, as well as for mental health treatment for two of the couple's children.  The CVCB provided a summary request for each individual victim's costs, as well as a packet that contained the police report and M.C.'s victim impact statement. The summary totals listed

   (1)    $2,970 for M.C.'s mental health counseling;

   (2)    $1,620 for the couple's son's mental health counseling;

(3)    $2,070 for the couple's youngest daughter's mental health counseling; and

(4)    $7,183.82 for M.C.'s medical expenses.

¶ 4     The summary did not identify the provider or providers related to these expenses, but the prosecution did disclose an email from the CVCB explaining that, while the CVCB had "both medical and mental health records for these claims," it had "concerns about providing the name of the mental health provider" because including that information would allow Rafaela-Ramirez to easily discover "where the victim is attending therapy on a regular basis."

¶ 5     Through counsel, Rafaela-Ramirez objected to the restitution request because the limited information provided prevented him from evaluating whether the requested amounts were linked to his convictions or whether they were reasonable given the nature of the treatment they apparently covered. He argued that the names of the providers associated with the expenses should be disclosed in accordance with the restitution statute, which requires the CVCB, when it requests restitution for the amount of victim assistance it has provided, to list the amount of money paid to each provider unless the "identity or location of a provider would pose a threat to

the safety or welfare of the victim." § 18-1.3-603(10)(b)(II), C.R.S. 2025. In cases where the victim's safety or welfare is a concern, the CVCB may provide "summary data reflecting what total payments were made for" certain listed expenses. *Id.*

¶ 6 Based on its review of the CVCB's restitution request, the record, and its own recollection of the trial, the court found that, notwithstanding Rafaela-Ramirez's incarceration, identifying the mental health providers could put the victims or others at risk. In particular, the court reasoned that, even if Rafaela-Ramirez's incarceration made it impossible for him to act personally, it was "not implausible" that he could enlist others to endanger the victims on his behalf, especially since the mental health treatment was ongoing. Therefore, the court ruled that the prosecution was only required to disclose summary expenses reflecting total payments made for M.C.'s and the children's mental health counseling. *See* § 18-1.3-603(10)(b)(II).

¶ 7 The court then inquired into the $7,183.82 for M.C.'s medical expenses, noting that the amount requested seemed high relative to the injuries that M.C. reported suffering from the assault. In response to the court's questioning, defense counsel confirmed that

M.C. underwent a forensic examination at the hospital and that the defense had received those medical records — which identified the location and facilities where M.C. was treated — in discovery. Although defense counsel assumed that these records also identified treating physicians, she could not recall that fact for certain "off the top of [her] head." Despite having these records, counsel nonetheless argued that she did not have enough information to know "where the restitution comes from."

¶ 8 The court — noting that the medical expenses presented "a closer call" than the request for restitution for the mental health visits — granted the $7,183.82 in M.C.'s medical expenses because "the defense was aware of the medical providers that [M.C.] sought out after the incidents at issue in this case" and therefore "was in a position to subpoena employees from those establishments to provide testimony concerning expenses."

¶ 9 Rafaela-Ramirez now appeals, arguing that the prosecution presented insufficient evidence to support any of the $13,843.82 in restitution that the court awarded to the CVCB.

## II.     Insufficient Evidence

¶ 10     Rafaela-Ramirez contends that the court erred by finding that disclosing provider information would endanger M.C. or the children.  He essentially argues that the prosecution presented insufficient evidence to trigger section 18-1.3-603(10)(a)'s rebuttable presumption for any of the mental health counseling expenses or M.C.'s medical expenses.  And in the absence of the rebuttable presumption, he maintains, the evidence was insufficient to link the conduct underlying his convictions to the CVCB's payouts.

### A.     Standard of Review

¶ 11     In the restitution context, we review for clear error the district court's determination that the defendant proximately caused the victim's losses.  *Martinez v. People*, 2024 CO 6M, ¶ 32.  But when, as here, a defendant challenges the sufficiency of the evidence supporting the amount of restitution awarded — that is, a challenge to the *quantum* of evidence provided to the court — our review is de novo.  *See id.* at ¶¶ 19-22; *People v. Moss*, 2022 COA 92, ¶ 11.  In other words, "our de novo determination is whether the prosecution presented sufficient evidence to convince a reasonable fact finder by a preponderance of the evidence of the amount of restitution owed."

*Moss*, ¶ 11. When conducting this review, we determine "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused that amount of loss." *People v. Barbre*, 2018 COA 123, ¶ 25.

### B.    Applicable Law

¶ 12    Criminal defendants must "make full restitution to those harmed by their misconduct." § 18-1.3-601(1)(b), C.R.S. 2025. Restitution "means any pecuniary loss suffered by a victim . . . proximately caused by an offender's conduct . . . that can be reasonably calculated and recompensed in money." § 18-1.3-602(3)(a), C.R.S. 2025. "Proximate cause in the context of restitution is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *People v. Rivera*, 250 P.3d 1272, 1274 (Colo. App. 2010).

¶ 13    Each judicial district has a CVCB, which can, among other things, compensate victims for medical expenses and mental health counseling proximately caused by a criminal act. *People v.*

6

*Martinez-Chavez*, 2020 COA 39, ¶ 12 (referencing §§ 24-4.1-103(1), -109(1)(a), (g), C.R.S. 2025). When a CVCB pays a victim compensation claim, it is treated as a "[v]ictim" for purposes of the restitution statute. § 18-1.3-602(4)(a)(IV). Therefore, "[i]f a CVCB awards compensation to a victim or other qualifying person, the CVCB is eligible to seek and obtain restitution from a defendant in [a] criminal proceeding." *People v. Fregosi*, 2024 COA 6, ¶ 43 (citation omitted).

¶ 14    In a restitution proceeding, the prosecution bears the burden of proving by a preponderance of the evidence the victim's losses and that the victim's losses were proximately caused by the defendant's criminal conduct. *Martinez-Chavez*, ¶ 14. "A fact is established by a preponderance of the evidence when, upon consideration of all the evidence, the existence of that fact is more probable than its nonexistence." *People v. Garner*, 806 P.2d 366, 370 (Colo. 1991). Materials the CVCB received, made, or kept to process a claim on behalf of a victim are confidential. § 24-4.1-107.5(1)(b), (2), C.R.S. 2025.

¶ 15    Accordingly, if certain circumstances are met, the restitution statute creates a rebuttable presumption that any amount paid on

behalf of a victim by the CVCB is a direct result of the defendant's criminal conduct. § 18-1.3-603(10)(a). The CVCB can trigger this rebuttable presumption either by disclosing (1) a list of the amount of money paid to each provider; or (2) "[i]f the identity or location of a provider would pose a threat to the safety or welfare of the victim, summary data reflecting what total payments were made for" certain listed expenses. § 18-1.3-603(10)(b)(I), (II). If triggered, the rebuttable presumption shifts the burden to the defendant to present evidence to show that the amount paid was not the direct result of his criminal conduct. *Fregosi*, ¶ 44.

¶ 16    In addition to the rebuttable presumption, the court may base its restitution order on victim impact statements or "other means" presented by the prosecution. § 18-1.3-603(2)(a).

### C.    Analysis

¶ 17    As noted above, the prosecution's restitution request included costs for two different types of treatment: mental health counseling for M.C. and the two children and medical treatment for M.C. We analyze these two categories separately.

### 1. Mental Health Counseling

¶ 18    Regarding mental health treatment, the prosecution presented several documents supporting its requested restitution amount, including the CVCB's summary data, an email relaying the CVCB's safety concerns regarding the disclosure of the identity of the mental health provider or providers, the police report relating to Rafaela-Ramirez's arrest, and M.C.'s victim impact statement.

¶ 19    The court found that this information, together with its understanding of the case as a whole, was enough to trigger the rebuttable presumption because, if the mental health providers were disclosed, it was "not implausible that [Rafaela-Ramirez] . . . could reach [out] to someone else to have them do something that he would otherwise want to do if he were out of custody." *See* § 18-1.3-603(10)(a). This finding was based in part on the CVCB's email explaining that "a simple google search" would reveal "where the victim [was] attending therapy on a regular basis." *See Fregosi,* ¶ 46 (upholding a restitution order to the CVCB for a victim's ongoing therapy based a summarized total because disclosing providers would allow the offender to "know where [the victim] [is] going to be on that day and time").

¶ 20    But that was not the only evidence in the record supporting the court's determination that Rafaela-Ramirez could still pose a threat despite his incarceration. For example, in her victim impact statement, M.C. expressed fear that Rafaela-Ramirez would "retaliate against me and after they give him a sentence he follows through with his threat of killing me as he has told me various times." She explained further that Rafaela-Ramirez abused the children, including while they were infants, and physically assaulted her in their presence. And the investigating officers' written reports detailed both Rafaela-Ramirez's extended history of abuse and his successful efforts to prevent M.C. from leaving him.

¶ 21    Given this evidence, and the fact that the mental health treatment was ongoing, the district court did not err by finding that disclosing the identity of the mental health providers would pose a threat to the safety or welfare of M.C. and the children. Thus, the court appropriately applied the statutory presumption that the amount of assistance provided and requested by the CVCB was the direct result of Rafaela-Ramirez's criminal conduct. *See* § 18-1.3-603(10)(a). Because Rafaela-Ramirez did not present evidence to

rebut the statutory presumption, the court did not err by awarding restitution to the CVCB for mental health counseling.

## 2. Medical Expenses

¶ 22    The record also contains sufficient evidence to support the district court's finding that Rafaela-Ramirez was responsible for M.C.'s $7,183.82 in medical expenses.[1]

¶ 23    At the threshold, we agree with Rafaela-Ramirez that the prosecution's restitution request did not establish that disclosing "the identity or location" of M.C.'s medical providers would pose a threat to her safety or welfare and that, as a result, the statutory presumption that "the amount of assistance provided and requested by the [CVCB]," § 18-1.3-603(10)(a), was attributable to his criminal conduct did not apply. To the contrary, the only safety concerns that the CVCB's email raised pertained to the ongoing mental health treatment. Moreover, documents provided to the defense in discovery (and also attached to the restitution motion) identified the

---

[1] To be clear, Rafaela-Ramirez does not appear to contest the district court's conclusion he was the proximate cause of at least *some* of these medical expenses; rather, he argues that without the relevant medical records he is unable to evaluate the CVCB's claim that he is responsible for *all* of them, or that all of the billing is accurate.

hospital where M.C. was treated and the date of the examination, and there was no indication that M.C.'s treatment was ongoing. Given these circumstances, we perceive no nonspeculative reason why disclosing the identity and location of M.C.'s past medical treatment providers would pose a threat to her safety or welfare.

¶ 24     However, the prosecution need not rely on the statutory presumption to establish the amount of restitution. It can also rely on "victim impact statements or other means." § 18-1.3-603(2)(a); *see Barbre*, ¶ 40. Based on our own review of the available[2] appellate record — in which we draw every inference fairly deducible from the evidence in favor of the prosecution, *see People v. Dyson*, 2021 COA 57, ¶ 15 — we conclude that the CVCB's restitution request, its clarifying email, the transcript of the

---

[2] Rafaela-Ramirez did not include trial transcripts as part of the record on appeal. "If an appellant intends to urge on appeal that a finding or conclusion is unsupported by or contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion." *People v. Duran*, 2015 COA 141, ¶ 12; *see* C.A.R. 10(b). Here, the judge who imposed the restitution order also presided over the trial and appears to have relied on his knowledge of the proceedings in awarding the CVCB's request for medical expenses. We must presume that "material portions omitted from the record would support the judgment." *Duran*, ¶ 12.

restitution hearing, the victim impact statements, and the police reports show by a preponderance of the evidence that M.C.'s medical expenses were attributable to Rafaela-Ramirez's criminal conduct.

¶ 25    Specifically, the CVCB's email indicated that it had medical billing records for M.C., and during the restitution hearing defense counsel confirmed that she had received medical records during discovery. Defense counsel also agreed that the prosecution had presented testimony about M.C.'s injuries from a nurse practitioner during trial and that M.C. had undergone a sexual assault nurse examiner (SANE) exam at the hospital. M.C.'s victim impact statement and the police reports include similar information and also establish the approximate date of exam.

¶ 26    Furthermore, M.C.'s victim impact statement recounted the exam in detail, making clear that it was not a cursory interaction, and was instead an extensive procedure that could be expected to incur significant expense. She explained that medical personnel photographed her bruising and documented evidence of past abuse, which included multiple facial fractures, a broken nose, several scars, and lingering abnormalities that resulted in headaches and

13

difficulty chewing. She also received treatment for sexually transmitted diseases and reported Rafaela-Ramirez's history of assaultive behavior.

¶ 27 To be sure, during the restitution hearing, defense counsel speculated that the SANE exam might not have been included in M.C. medical expenses or that M.C.'s medical expenses were for treatment unrelated to Rafaela-Ramirez's conduct. But Rafaela-Ramirez cites no authority suggesting that the prosecution was required to disprove such speculation through the testimony of the victim or hospital personnel. And, notably, the attachments to the restitution motion indicated that M.C. visited the hospital the day after the assault.

¶ 28 Therefore, viewing the record in the light most favorable to the prosecution, we conclude that the record supports the court's finding that the amount requested by the CVCB for M.C.'s medical expenses was attributable to Rafaela-Ramirez's convictions.

### III. Disposition

¶ 29 We affirm the restitution order.

JUDGE J. JONES and JUDGE SCHUTZ concur.

14